UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- x

EASTON STEVENS,
                       Plaintiff,

           -against-

HMSHOST CORPORATION, HOST
INTERNATIONAL, INC. and HOST
SERVICES OF NEW YORK,

                    Defendants.

------------------------------------------------------- x

Case No. 1:10-cv-03571-ILG-VVP

Judge I. Leo Glasser

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY FINAL JUDGMENT

Gregory V. Mersol
**BAKER & HOSTETLER LLP**
3200 PNC Center
1900 East Ninth Street
Cleveland, OH 44114-3485
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
gmersol@bakerlaw.com

Patrick M. Muldowney
**BAKER & HOSTETLER LLP**
200 South Orange Avenue
SunTrust Center, Suite 2300
P.O. Box 112
Orlando, FL 32802-0112
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
pmuldowney@bakerlaw.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND .................................................................................................2

III.    PROCEDURAL HISTORY STEVENS IS THE ONLY REMAINING
        PLAINTIFF IN THIS ACTION ..........................................................................3

IV.     LAW AND ARGUMENT HOST IS ENTITLED TO SUMMARY JUDGMENT
        BECAUSE STEVENS QUALIFIES AS EXEMPT UNDER THE FLSA. ...........3

        A.    Stevens Is Exempt As An Executive ......................................................3

        B.    Host Satisfies The Salary Basis Test With Respect To Stevens.............4

              1.    Stevens' Primary Duty Was Management ...................................4

                    a.    Stevens Performed Management Tasks...........................4

                    b.    Performing Management Tasks Was Stevens' Primary Duty
                          Despite His Allegation That He Spent Most Of His Time Doing
                          Non-Exempt Work ................................................................12

              2.    Stevens Customarily And Regularly Directed The Work Of Two Or
                    More Employees...........................................................................19

              3.    Stevens' Recommendations Concerning Changes Of The Status Of
                    Other Employees Were Given Particular Weight .....................19

        C.    Host Is Also Entitled To Summary Judgment Because Stevens Is Exempt
              Under The Administrative Exemption Of The Flsa .............................21

              1.    Host Satisfies The Salary Basis Test With Respect To Stevens...............21

              2.    Stevens' Primary Duty (Alternatively Or In Addition To Management)
                    Was The Performance Of Non-Manual Work Directly Related To The
                    Management Or General Business Operations Of Host...........................21

              3.    Stevens' Primary Duty Included The Exercise Of Discretion And
                    Independent Judgment With Respect To Matters Of Significance ..........22

V.      CONCLUSION .................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Baldwin v. Trailer Inns, Inc.*,
266 F.3d 1104 (9th Cir. 2001) ........................................................................ 16

*Brillas v. Bennett Auto Supply, Inc.*,
675 F. Supp. 2d 1164 (S.D. Fla. 2009) ........................................................... 11

*Burson v. Viking Forge Corp.*,
661 F. Supp. 2d 1010 (N.D. Ohio 2009) ........................................................ 20

*Diaz v. Team Oney, Inc.*,
291 Fed. Appx. 947 (11th Cir. 2008) ........................................................ 13, 15

*Donovan v. Burger King Corp.*,
672 F. 2d 221 (1st Cir. 1982) .................................................................... 11, 12

*Donovan v. Burger King Corp.*,
675 F.2d 516 (2d Cir. 1982) ..................................................................... 11, 12

*Dorvil v. Host International, Inc.*,
S.D. Fla. Case No. 12-23293, slip op. (Mar. 6, 2013 Order) ........................*passim*

*Farnham v. Riimic, LLC*,
Case No. No. 12–60153–CIV, 2012 WL 5187851 (S.D. Fla. Oct. 19, 2012)..................22, 24

*Haines v. Southern Retailers, Inc.*,
939 F. Supp. 441 (E.D. Va. 1996) .................................................................. 16

*Jackson v. Advance Auto Parts, Inc.*,
362 F. Supp. 2d 1323 (N.D. Ga. 2005) 1334.................................................. 16

*Jones v. Virginia Oil Co., Inc.*,
69 Fed. Appx. 633 (4th Cir. 2003) ............................................ 11, 14, 16, 17, 19

*Kastor v. Sam's Wholesale Club*,
131 F. Supp. 2d 862 (N.D. Tex. 2001) ........................................................... 16

*Lovelady v. Allsup's Convenience Stores, Inc.*,
304 Fed. Appx. 301 (5th Cir. 2008) .............................................................. 20

*Moore v. Tractor Supply Company*,
352 F. Supp. 2d 1268 (S.D. Fla. 2004).................................................. 11, 15, 19

*Murray v. Stuckey's, Inc.*,
   939 F.2d 614 (8th Cir. 1991) ................................................................. 16

*Rainey v. McWane, Inc.*,
   552 F. Supp. 2d 626 (E.D. Tex. 2008) ................................................. 20

*Stricker v. Eastern Off Road Equipment, Inc.*,
   935 F. Supp. 650 (D. Md. 1996)............................................................ 23

*Thomas v. Speedway SuperAmerica, LLC*,
   506 F.3d 496 (6th Cir. 2007) ................................................................ 14

*Viola v. Comprehensive Health Mgmt., Inc.*,
   441 Fed. Appx. 660 (11th Cir. 2011) (per curiam)........................... 22, 24

**Statutes**

29 U.S.C. § 201 ................................................................................................. 1

29 U.S.C. § 207(a)(l) ........................................................................................ 3

29 U.S.C. § 213(a)(l) ........................................................................................ 3

New York Labor Law §§ 650 *et seq.* .............................................................. 1

**Other Authorities**

29 C.F.R. § 41.100(a)(4) .............................................................................. 19

29 C.F.R. § 541.100(a) .................................................................................... 3

29 C.F.R. § 541.100(a)(1) .............................................................................. 4

29 C.F.R. § 541.100(a)(3) ............................................................................ 19

29 C.F.R.§ 541.102(b) .................................................................................... 4

29 C.F.R. § 541.105 ...................................................................................... 19

29 C.F.R. § 541.106(a) .................................................................................. 18

29 C.F.R § 541.106(b) ................................................................................... 18

29 C.F.R. § 541.200(a) .................................................................................. 21

29 C.F.R. § 541.200(a)(3) ............................................................................ 22

29 C.F.R. § 541.201(a) .................................................................................. 22

606410407.1

29 C.F.R § 541.201(b) ................................................................................................ 21, 22

29 C.F.R. § 541.202(a) .................................................................................................... 22

29 C.F.R. § 541.602 .......................................................................................................... 4

29 C.F.R. § 541.700 ......................................................................................................... 11

29 C.F.R. § 541.700(a) .................................................................................................... 12

29 C.F.R § 541.700(c) ..................................................................................................... 15

606410407.1

I.     **INTRODUCTION**

In his Complaint, plaintiff Easton Stevens alleges that defendants, HMSHOST Corporation, Host Services of New York, Inc. and Host International, Inc.[1] (collectively "Host") violated the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 *et seq.* and New York Labor Law §§ 650 *et seq.* and seeks an award of unpaid wages, liquidated damages, and attorneys' fees and costs.[2]   (Compl. ¶¶ 1-2, 51, 56.)   Specifically, Stevens alleges that while employed as an Assistant Food & Beverage Manager I ("ASM") assigned to Host's Burger King, Starbucks, Ciao and Stone Rose restaurant units located at the John F. Kennedy Airport ("JFK"), he worked an average more than 40 hours per week without being compensated at the rate of not less than one and one half times the regular rate at which he was employed for those hours in excess of 40.   (Compl. ¶¶ 12-13.)

Stevens, however, is not entitled overtime compensation because he fits squarely within the FLSA's executive exemption, as described by applicable U.S. Department of Labor ("DOL") regulations, in that Stevens earned a salary above the applicable threshold, his primary duty was the management of a store, he customarily and regularly directed the work of two or more full-time employees, and he made recommendations regarding personnel action and decisions and other discipline of employees that were given particular weight.

---

[1] Stevens was employed by Host Services New York, Inc.   For the purposes of this motion, however, Host assumes that all defendants employed Stevens.

[2] The New York State Department of Labor has determined that New York Labor Law adopts the FLSA's exemption standards.   *See* 12 N.Y.C.R.R. 142-2.2. "Federal courts have followed the Department's guidance, applying FLSA exemptions to state Labor Law claims."   *Carter v. Tuttnaeur U.S.A. Co.*, No. 13-CV-00679 ADS ARL, 2015 WL 148468, at *4 (E.D.N.Y. Jan. 12, 2015).   Thus, Stevens' state law claims should be dismissed for the same reasons as his federal claims.

Moreover, Stevens meets the requirements of the FLSA's administrative exemption, as described by applicable DOL regulations, in that Stevens earned a salary above the applicable threshold, his primary duty was the performance of office or non-manual work directly related to the management or general business operations of Host's stores and included the exercise of discretion and independent judgment with respect to matters of significance.

Thus, there is no genuine issue as to any material fact with respect to Stevens' claims, and Host is entitled to entry of a judgment in its favor as a matter of law on both Stevens' federal and state claims.

## II.   BACKGROUND

Stevens worked as an ASM for Host at its JFK location from January 2008 until July or August 2010.  (SOF ¶ 10.)  While at work, he oversaw operations at the Burger King, Ciao, and Starbucks units in the mezzanine location of Terminal 3.  (SOF ¶ 11.)  Approximately 16 employees per day worked underneath Stevens at the Burger King location, and additional employees reported to him at Starbucks and Ciao.  (SOF ¶ 14.) On average, Stevens worked a five-day workweek comprised of 10-hour shifts, or approximately 50 hours per week, receiving a salary of $740.15 per week.  (SOF ¶ 15.)

During his shifts, he moved among his three stores depending on where his managerial oversight was most needed. (SOF ¶ 17.)  As the manager in charge during his shifts, Stevens routinely issued discipline to employees, monitored their performance, interacted with customers, evaluated the appearance and function of the stores, and generally maintained responsibility for everything that happened within the stores.  (SOF ¶¶ 18-25.)

606410407.1

III.   PROCEDURAL HISTORY
       STEVENS IS THE ONLY REMAINING PLAINTIFF IN THIS ACTION

This action began as a putative collective action when Stevens filed his Complaint on August 2, 2010.  Following conditional certification, approximately 275 opt-in plaintiffs filed their consent forms to join the action.  On August 27, 2014, this court decertified the collective action because the 275 opt-in plaintiffs were not similarly situated, as required by Section 16(b) of the FLSA.  As a result, Stevens remains as the lone named plaintiff.

IV.   LAW AND ARGUMENT
      HOST IS ENTITLED TO SUMMARY JUDGMENT BECAUSE STEVENS
      QUALIFIES AS EXEMPT UNDER THE FLSA.

   A.   Stevens Is Exempt As An Executive

The FLSA requires that an employee receive overtime pay if he or she works more than 40 hours in a week.  29 U.S.C. § 207(a)(l).  The statute, however, exempts from this requirement "any employee employed in a *bona fide* executive ... capacity."  29 U.S.C. § 213(a)(l).  The DOL has promulgated regulations that further describe and interpret the scope of this exemption. Specifically, the DOL's regulations provide that an employee qualifies as an executive if:

(1)   He is compensated on a salary basis at a rate of at least $455 per week;

(2)   His primary duty is management of the enterprise or a customarily recognized department or subdivision of the enterprise;

(3)   He customarily and regularly directs the work of two or more other employees; and,

(4)   He has the authority to hire or fire other employees or his suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).[3]  As set forth below, Host satisfies each one of these elements as to Stevens' employment as an ASM.

### B.    Host Satisfies The Salary Basis Test With Respect To Stevens

To qualify as a *bona fide* executive, an employee must receive a salary of at least $455 per week.  29 C.F.R. § 541.100(a)(1).  The salary cannot be subject to reduction because of variations in the quality or quantity of the work performed.  29 C.F.R. § 541.602.  During the relevant time frame, it is undisputed that at all times relevant to his claim, Stevens received a salary at or above $455 per week.  (March 11, 2011 Deposition of Easton Stevens 51:20-22, Ex. 2.)[4]  Stevens' salary, thus, meets the above-mentioned first prong of the executive exemption.

### 1.    Stevens' Primary Duty Was Management

### a.    Stevens Performed Management Tasks

The DOL's regulations provide a list of "management" activities, which include, but are not limited to:

> Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property.

---

[3] The DOL has promulgated additional regulations that further describe and define these tests; these regulations are discussed *infra*.

[4] The Stevens Deposition is attached as Exhibit C to the Muldowney Declaration that accompanies this memorandum.

29 C.F.R.§ 541.102(b).   Here, it is undisputed that as an ASM, Stevens regularly performed many of these management duties as an ASM in the JFK Terminal 3 mezzanine, where he managed a Burger King, Starbucks, and Ciao locations.[5] (Stevens Dep. 57:3-6.)   Moreover, Host's job description for ASM I's such as Stevens states that an ASM I tracks the DOL regulations to ensure that ASMs are in fact appropriately performing exempt work:

**Description**

**Summary:**

The Assistant Manager I is a junior level assistant manager, typically supporting the manager of a store with low sales volume and routine operations, and is responsible for day-to-day supervising of non-management associates, assigning specified work to non-management associates, focusing on store level operation performance, coaching and developing Shift Supervisors and other non-management associates and performing all other responsibilities as directed by the business or assigned Management of which associate is capable of performing. This is an exempt position and typically reports to the Store Manager, depending on local requirements.

**Essential Functions:**

- Supervises the day-to-day activities of Shift Supervisors and other non-management associates
- Assigns work responsibilities, prepares schedules, and ensures that all shifts are covered
- Prepares daily orders, ensures units are stocked with appropriate levels of product and coaches Shift Supervisors on order procedures
- Conducts and coordinates on-the-job training for associates, and ensures all associates receive basic skills training to perform their jobs
- Resolves routine questions and problems and refers more complex issues to higher levels
- Provides recommendations for hiring, firing, advancement, promotion or any other status change of associates within the store

(SOF, ¶ 9 (Doc. 38-4).)

As an ASM I, Stevens performed these duties.   He directed a daily staff of approximately 16 associates at Burger King (8 per shift) and additional employees at Starbucks and Ciao as he moved from store to store, managing operations.   (Stevens Dep. at 70:2-7, 71:3-18, 101:16-102:2.)   His ASM work consisted monitoring his employees' performance and auditing their work on a regular basis.   (*Id.* at 74:11-25, 79-80, 86-87, 158-159, 204:2-4, 213, 214-224, Exs. 6,

---

[5] Although Stevens' complaint alleges he managed a Stone Rose location as well, he testified that he did not work at Stone Rose. (Stevens Dep. 64-65.)

19, 24, 26-32.)  He was responsible for overseeing the cleanliness and operations of his units and making sure that customers were satisfied.  (*Id.* at 76, 86:15-20, 158-159, 204:2-4, 213, 214-224, Exs. 6, 19, 24, 26-32.)  He was responsible for training associates.  (*Id.* at 167, 213, Exs. 7, 24.) He made sure that associates took their breaks when mandated by law, and made sure that associates were working in their appropriate areas, doing the jobs they were supposed to be doing.  (*Id.* at 40-41, 158-159, 204:2-4, 213, 214-224, Exs. 6, 19, 24, 26-32.)  When employees had to be disciplined or even terminated, Stevens either wrote them up as their manager or reported to Human Resources that an event had occurred for which discipline was necessary. (*Id.* at 77-78, 158-159, 164, 204:2-4, 213, 214-224, Exs. 6, 19, 24, 26-32.)  For instance, the disciplinary action below is indicative of Stevens' authority to take action against associates who failed to follow company policy:



(Stevens Dep. Ex. 29.)

When more severe action, such as a termination, was called for, Stevens was also regularly involved.  Below is an example of the input he provided in termination proceedings:

6

**Formal Written Warning**

To : Human Resources
From: Easton Stevens
CC: Ken Forrest
Re: Formal Written Warning for Joyce Dubon


On May 22, 2008 at 9:00 p.m. I entered the Starbucks unit and saw Kadeem, Shea and Joyce .Upon entering I stated that dirty clothes, aprons and shoes should not be placed on top of the refrigeration and left there overnight. Shea stated that Benice,another manager, had made the same statement the other day. Kadeem stated that she does not leave her clothes in the unit. Joyce started yelling that we must provide her with a locker. I said that she must wear a clean uniform to work because wearing a dirty uniform is in violation of company policy. Joyce continued yelling  and stated that I called her dirty and that I must leave her alone. She also stated that she washes her uniform once a week and if I noticed her uniform is dirty that I must bring it home and wash it myself. At that point she called me "son" which is a phrase used outside of the work place. I told her not to refer to me that way  and she said "Nigger please". Joyce continued yelling that I must leave her alone and that she is not going to take her uniform home. I immediately called Ken Forrest however, I had to leave a voicemail describing the incident and a request that he call me back immediately. This is to be documented as a formal written warning.


_____          5/23/08          E. Stevens
Employee's signature              Date              Manager's signature

(Stevens Dep. Ex. 26.)  The employee, Joyce Dubon, was terminated following Stevens' written statement about her disrespectful and insubordinate conduct toward him as her manager. Although Stevens was not the manager who signed her termination notice, he was listed as the manager issuing the termination:



**CORRECTIVE ACTION WRITTEN WARNING NOTICE**
**(Non-Management)**

**HMSHost**                                                    Interoffice Memo

Date: 6/2/2008
To: Joyce Dubon
From: Easton Stevens
Copies: Associate Personnel File
Subject: Termination for Gross Misconduct

(*Id.*)

Stevens further exercised his executive authority by ensuring his stores were adequately stocked. (*Id.* at 76, 85:16-20, 162, 165.) Not only that, but Stevens would open each of the stores on a daily basis, update inventory, and make sure that staffing was appropriate. (*Id.* at 40-41, 65-66.)

Even when he was running a cash register or cooking food to help out associates, Stevens was always managing his associates, determining how well his three store concepts were operating. (*Id.* at 102:8-11; 159-:23-160:3.) As he acknowledged, Host expected him to be the responsible party for his stores—Burger King, Starbucks, and Ciao. (*Id.* at 158:22-159:3, Ex. 6.) And to that end, he was held accountable for whatever happened in his stores. (*Id.* at 159.) In fact, he was the manager in charge who made sure that Host's policies were implemented and followed by the associates working under him. In Stevens' words, he "was the assistant that works in different unit to make sure that whatever they say goes the way they want it." (*Id.* at 159:6-8.)

Because of the nature of his job, Stevens was empowered to make executive decisions—such as when to close a store or make emergency staffing decisions. That authority is reflected

in the email below, which Stevens sent to his store manager who ultimately approved of Stevens'

exercise of discretion in handling a difficult situation, including closing a store temporarily:

> **From:** Stevens, Easton
> **To:** Gomez, Angel
> **Cc:** Knight, David; VERDEJO, MONICA; Raymond, Debra
> **Sent:** Sun Jul 19 07:05:45 2009
> **Subject:**
>
> Good morning angel.I had three call out this morning,Tyhe Marshall a cashier from burger king , Breth Knott a cashier from star bucks ,and Monica Segastune a server from samuel adams.Samuel Adams will be close for breakfast and i will use the cook in bruger king until its time for lunch.Also, I have two old associates and one new associates in star bucks,the food court however has two new associates and I an going to send one of my old associates to get out breaks in the food court. have a good day Angel .

(Stevens Dep. Ex. 13.)

In another representative instance, he determined that he would need to adjust staffing

that would require an employee to receive overtime compensation.   The email below reflects

Stevens notifying his store manager of the situation and Stevens' decision:

> **From:** Stevens, Easton
> **To:** Gomez, Angel; Knight, David
> **Sent:** Mon Feb 08 14:37:07 2010
> **Subject:**
>
> Angel, Nigel calls out and Valdez is going to be 3 hrs late. I am going to use some OT. OK?
>
>
> Thank you,

(Stevens Dep. Ex. 20.)

Importantly, Stevens did not have the authority to unilaterally classify himself as non-

exempt.  In other words, he simply could not refuse to perform his managerial duties and remove

himself from the executive exemption status.  *See Scott v. SSP Am., Inc.*, No. 09-CV-4399 RRM

VVP, 2011 WL 1204406, at *10 (E.D.N.Y. Mar. 29, 2011) (food and beverage unit manager at

JFK Airport did not qualify herself as non-exempt in part because she "was not directed by a

supervisor to perform nonexempt work" but rather did so out of a sense to duty to prevent

associates from being overworked). This is relevant because Stevens' deposition testimony reflects that on occasion, he intentionally disregarded his management role even though his store manager explained clearly that Stevens was to be performing managerial work.

For instance, an April 2009 memorandum from his store manager, Bernice Debellot, explains in detail the management duties that assistant managers are supposed to be performing on a daily basis. It details high-level responsibilities in categories regarding anticipation of business needs, leadership, knowledge, coaching and training of associates, communication, behavioral patterns, profitability, and team work. (Stevens Dep. Ex. 6.) The memorandum was sent to Stevens and the two other ASMs who ran the stores along with Stevens in the mezzanine location. Stevens, however, testified that he did not appreciate being told about his responsibilities:

> 9    They wanted to hold me accountable
> 10   for whatever happen in Burger King, and I had
> 11   a problem with that.

(Stevens Dep. at 159.)

Stevens also had a problem with the following February 5, 2009 email from Debellot, which clearly outlines the managerial work he is supposed to be doing:

Dear Easton,

Moving forward we must focus on the following--- Sales, Labor, and cost. We can accomplish these Goals i.e. staying on top of the daily running of each shift. by the hour, taking hourly readings to now there we are in sales, and Labor hours.
Checking for opportunities to increase sales i.e. train associates to sell up, drop less products to reduce waste. Training associates to committed to good work habits, being a leader, jumping in and out of positions to push for higher sales. Motivate associates to love coming to work i.e. thanking them for good work habits, being on time, good on safety issues. We must go back to basic, strong leadership that is balance, and fair. Have a since of ownership in HMSHost mission. We need to focus on daily REQ'S being completed according to Pars and the daily needs of the correct products for sales trend. We must check our weekly schedule, seek way to reduce labor hours where necessary without hurting sales. When teams work towards the same goals the results can be profitable and rewarding. Any questions let's discuss same.

Best Regards

Bernice

(Stevens Dep. 167-74, Ex. 7.)  Stevens testified that he did not want to be responsible for these items, but the communication is clear—as is the ASM corporate job description (*Id.* Exs. 47, 48, 49.)—that these managerial duties are the ones he is supposed to be performing.

As set forth above, Stevens' deposition testimony and related exhibits demonstrate the managerial nature of his position.  *See Brillas v. Bennett Auto Supply, Inc.*, 675 F. Supp. 2d 1164, 1169 (S.D. Fla. 2009) (internal citations omitted) ("Cases applying 29 C.F.R. § 541.700 (2004) hold that assistant managers are exempt so long as they perform some management tasks."); *see also Jones v. Virginia Oil Co., Inc.*, 69 Fed. Appx. 633, 636 (4th Cir. 2003) (holding "record is clear" that employee performed managerial duties where she was responsible for invoice paperwork, scheduling, ordering merchandise, handling customer complaints, hiring, training and evaluating employees); *Donovan v. Burger King Corp.*, 672 F. 2d 221, 226 (1st Cir. 1982) ("*Burger King I*") (recognizing that supervision of other employees is clearly a management duty and that "[e]nsuring that company policies are carried out constitutes the very essence of supervisory work.") (internal quotations omitted); *Moore v. Tractor Supply Co.,* 352 F. Supp. 2d 1268, 1275 (S.D. Fla. 2004) (granting summary judgment on executive exemption where, among other things, plaintiff's own deposition testimony demonstrated the managerial

11

nature of his position).   The record shows that Stevens performed multiple exempt duties identified by the DOL on a regular basis.   Thus, he was clearly involved in "management" duties.

> **b.   Performing Management Tasks Was Stevens' Primary Duty Despite His Allegation That He Spent Most Of His Time Doing Non-Exempt Work**

The term "primary duty" means the "principal, main, major, or most important duty that the employee performs."  29 C.F.R. § 541.700(a).  "Determination of an employee's primary duty must be based on all the facts of in a particular case, with the major emphasis on the character of the employee's job as a whole."  *Id.*  The factors to consider in the analysis include, but are not limited to:  (1) the amount of time spent performing exempt work; (2) the relative importance of the exempt duties as compared with other types of duties he performs; (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.  *Id.*  In *Donovan v. Burger King Corp.,* 675 F.2d 516, 520 (2d Cir. 1982) ("*Burger King II")*, the Second Circuit addressed the exempt status of assistant managers who, among other things, assigned hourly employees to particular tasks and monitored their performance, determined the quantity of food to be prepared, ordered supplies and maintained sufficient inventory, dealt with customer complaints, and audited cash receipts.  675 F.2d at 17. The assistant managers also spent a significant amount of time performing the same work as hourly employees, such as preparing and serving food.  *Id.*  The court held that these assistant managers qualified as exempt executives because, even though so much of their time was spent performing manual work, their primary duty was management.  *Id.* at 520-21.  Specifically, the court recognized that the restaurant could not operate successfully unless the assistant managers' managerial functions, such as determining the amounts of food to be ordered and prepared,

12

running cash checks, scheduling employees, keeping track of inventory, and assigning employees to particular jobs, were performed. *Id.* For that reason, as well as the fact that much of the oversight of the operation could be carried out simultaneously with the performance of nonexempt work, the court found that the principal or most important work of the assistant managers was managerial. *Id.*; *see also Diaz v. Team Oney, Inc.*, 291 Fed. Appx. 947, 949-50 (11th Cir. 2008) (finding managerial tasks to be manager's primary duty even where he testified that his prime responsibility was to service customers by making and cutting pizzas, routing deliveries of pizzas, greeting customers and cleaning the store because, while he performed those kinds of duties, his managerial duties were significantly more important to the operation of the restaurant than his non-managerial tasks).

Indeed, in a factually and legally similar case, a Southern District of Florida court determined that a Host ASM was primarily a manager even though he "performed non-exempt tasks such as unloading and putting out merchandise, running cash registers, cooking and cleaning stores." *Dorvil v. Host International, Inc.*, S.D. Fla. Case No. 12-23293, slip op. at 7 (Mar. 6, 2013 Order) (Exhibit D). The court noted that it was "clear that Dorvil's primary duty was management" because of "his managerial duties of delegating assignments to associates, handling of the cash deposits, product review and ordering, scheduling, and overall supervision of his employees that were of significant importance to the operation of the units." *Id.* "Additionally, Dorvil testified that even while performing nonexempt manual tasks, he continued to supervise employees," leading the court to approve of his exempt status. *Id.*, slip op. at 8.

Stevens' managerial authority is reflective of Dorvil's. Stevens testified that he when he worked, he ran the store units to which he was assigned—Burger King, Ciao, and Starbucks. (Stevens Dep. at 203.) In fact, he expressly conceded that he performed supervisory work as

13

listed in Host's ASM job description 30 percent of the time. (Stevens Dep. 204:2-4.) And indeed, 75 percent of the time, he monitored operations at the three stores to determine how his use as a manager would be best served, moving between the stores as necessary. (*Id.* at 102:8-11.) And when he wasn't doing that, he was making sure the units were clean, talking to customers, and making sure associates were taking their breaks. (*Id.* at 103:6-14, 107:6-108:3.) So even though Stevens may also have performed hourly work such as running a cash register, serving pastries, and cooking food, his primary duty was management as the stores could not function without his managerial presence.

In nearly identical fashion to *Dorvil*, even while performing manual, nonexempt tasks to assist the hourly associates, Stevens was always doing what was needed to keep the restaurants open. Stevens Dep. 203:13-14; *Dorvil*, slip op. at 7-8. Without Stevens' delegation of assignments to associates, handling of the cash deposits, product review and ordering, customer interaction and overall supervision and direction of his employees – much of which was done by him without direct supervision – the stores simply could not run at all. *Dorvil*, slip op. at 7-8; *see also Jones*, 69 Fed. Appx. at 638 (managerial functions such as ordering inventory, training, scheduling employees and completing paperwork were critical to the success of the store); *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 504 (6th Cir. 2007) (managerial duties were more important because store could not function without manager performing essential tasks such as training and scheduling); *Burger King II*, 675 F.2d at 521 (restaurants could not run successfully without managerial functions of assistant managers). Stevens' managerial duties were indisputably more important than his other tasks because they were essential to the functioning of the store. (Stevens Dep. 209:6-18.)

14

Notwithstanding Stevens' evidently critical management role, he alleges that he spent a majority of his time performing non-exempt work.  (Stevens Dep. 146.)  Yet, even if that were true (which Host disputes), the nature of the work that he did and the way he did it demonstrate clearly that his primary duty was management.   While the amount of time an employee spends performing nonexempt work can be considered in evaluating his primary duty, it "is not the sole test, and nothing . . . requires that exempt employees spend more than 50 percent of their time performing exempt work."  29 C.F.R § 541.700(c).  The DOL's regulations make this perfectly clear with the following explanation:

> assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register.

29 C.F.R. § 541.700(c).

In fact, the *Dorvil* court quoted the regulation *verbatim* in granting summary judgment to Host on the issue of an ASM's exempt status because the time spent on non-exempt tasks is largely immaterial when the "primary duty is management."  *Dorvil*, slip op. at 7-8 (quoting *Diaz v. Team Oney, Inc.*, 291 F. App'x 947, 949 (11th Cir. 2008)).

Host asserts that Stevens spent significantly more time performing non-managerial work than he claims; however, for purposes of this Motion, that dispute is not material.  Even if Stevens did spend the majority of his day performing non-managerial work, as he claims, that fact would not preclude a finding that management was his primary duty.  *See Dorvil*, slip op. at 7-8.  Case law is replete with decisions holding managers and assistant managers to be exempt even where they spent the vast majority of their time performing manual tasks.  *See, e.g., Moore*, 352 F. Supp. 2d at 1274-75 (store manager exempt despite spending 95% of his time performing

15

nonexempt tasks); *Jones*, 69 Fed. App'x at 637 (manager exempt though she claimed to spend 75-80% of her time performing basic line-worker tasks); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1113 (9th Cir. 2001) (managers exempt despite claiming to spend 90% of their time performing nonexempt work); *Murray v. Stuckey's, Inc.*, 939 F.2d 614, 618-20 (8th Cir. 1991) (managers exempt though they claimed that up to 90% of their time was spent performing non-managerial duties); *Jackson v. Advance Auto Parts, Inc.*, 362 F. Supp. 2d 1323, 1334 (N.D. Ga. 2005) (assistant managers exempt despite contending they spent 90% of their time performing nonexempt tasks); *Kastor v. Sam's Wholesale Club*, 131 F. Supp. 2d 862, 866-67 (N.D. Tex. 2001) (bakery manager exempt though he claimed to spend 90% of his time performing the same work as the hourly employees); *Haines v. Southern Retailers, Inc.*, 939 F. Supp. 441, 450 (E.D. Va. 1996) (store manager exempt despite spending 90% of her time performing non-managerial duties).

For instance, in both *Burger King I* and *Burger King II*, the First and Second Circuits ruled that assistant managers of a Burger King restaurant (like Stevens) were exempt executive employees even though they spent more than 50% of their time preparing and serving food. *Burger King I*, 672 F.2d at 226; *Burger King II*, 675 F.2d at 520.  The Burger King assistant managers supervised other employees, scheduled employees, assigned work, oversaw production quality, spoke with customers, trained employees, determined the quantity of food to be prepared at any given time, and performed various recordkeeping, inventory, and cash reconciliation duties.  *Burger King I*, 672 F.2d at 223; *Burger King II*, 675 F.2d at 521.  Thus, even though the assistant managers spent a majority of their time performing nonexempt work, management was still their primary duty because it was a significant part of their job.  *Burger King I*, 672 F.2d at

226-27; *Burger King II*, 675 F.2d at 520-21.  "[O]ne can still be 'managing' if one is in charge, even while physically doing something else[.]"  *Burger King I*, 672 F.2d at 226.

Similarly, in *Jones*, the plaintiff was a manager at a combination Dairy Queen and convenience store who testified that she spent 75-80% of her time carrying out nonexempt tasks such as cooking food, serving ice cream, stocking shelves and cleaning the store.  69 Fed. App'x at 635.  The Fourth Circuit nevertheless found that the plaintiff simultaneously performed many management tasks such as supervising employees and handling customer complaints while performing her nonexempt duties, and therefore held that the time factor was not determinative. *Id.* at 637.

Stevens claims that he spent majority of his time "in the units, cashing, expediting, making sandwiches."  (Stevens Dep. 202:18-20.)  But he also testifies that that during this same time he was accountable for anything and everything that happened within the Burger King restaurant (*Id.* at 159); he performed walk-throughs and evaluated employee performance at all three restaurants (*Id.* at 165); he reported all incidents immediately via oral or written documentation (*Id.* at 166); he documented work-place injuries (*Id.* at 184-85); he documented and processed employee discipline (*Id.* at 215, 217, 221, 224, 227, 228, 236); he evaluated whether his stores' supplies were on par (*Id.* at 76); he audited servers and cashiers (*Id.* at 86-87); he monitored traffic flow (*Id.* at 161); he monitored daily staffing (*Id.* at 162); he monitored product availability (*Id.* at 162); he maintained awareness of the general conditions of his units (*Id.* at 163); he provided direction and support to his employees (*Id.* at 163); and he corresponded with his store manager and general manager about employee performance (*Id.* at 163-64.)  Thus, though Stevens may have spent a significant amount of time performing nonexempt work,

management was still his primary duty because it the most significant part of his job.  *See Burger King I*, 672 F.2d at 226-27; *Burger King II*, 675 F.2d at 520-21; *Dorvil*, slip op. at 7-8.

Moreover, a strict time division is particularly misleading because, as here, one can still be managing if one is in charge, even while physically doing something else.  *Burger King I*, 672 F.2d at 226-27; *Dorvil*, slip op. at 7-8.  The facts of this case are similar to an example set forth in the regulations:

> [A]n assistant manager in a retail establishment may perform work such as serving customers, cooking food, stocking shelves and cleaning the establishment, but performance of such nonexempt work does not preclude the exemption if the assistant manager's primary duty is management.  An assistant manager can supervise employees and serve customers at the same time without losing the exemption.  An exempt employee can also simultaneously direct the work of other employees and stock shelves.

29 C.F.R § 541.106(b).  Stevens testified that even while performing manual work, he continued to supervise employees.  (Stevens Dep. at 163-64.)  Thus, his testimony demonstrates that his performance of non-managerial work was concurrent with his exempt managerial work.

Indeed, the DOL's regulations specifically contemplate that an employee can concurrently perform exempt and nonexempt work.  29 C.F.R. § 541.106(a).  "Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work.  In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods."  *Id.*

At all times Stevens remained responsible for the success or failure of the business operations of the units.  So while he may dispute that management was not his primary duty because he claims to have spent the majority of his time doing non-exempt work, the regulations

and applicable case law clarify that performance of these duties, in conjunction with overall supervision and management of the units, is not contrary to the application of the exemption. Like the plaintiffs in *Dorvil*, *Moore*, *Jones*, *Burger King I*, *Burger King II*, and other referenced cases, Stevens' primary duty remained management, and he thus satisfies the second prong of the executive exemption.

### 2. Stevens Customarily And Regularly Directed The Work Of Two Or More Employees

A *bona fide* executive must customarily and regularly direct the work of two or more other employees. 29 C.F.R. § 541.100(a)(3). As an ASM, it is undisputed that Stevens regularly supervised approximately 8 hourly employees per shift at Burger King and additional employees at Starbucks and Ciao. (Stevens Dep. 70:2-7.) Thus, the third prong of the executive exemption is satisfied.

### 3. Stevens' Recommendations Concerning Changes Of The Status Of Other Employees Were Given Particular Weight

A *bona fide* executive must have the authority to hire or fire other employees or the executive's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change in of status of other employees must be given particular weight. 29 C.F.R. § 41.100(a)(4). "An employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance, and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." 29 C.F.R. § 541.105.

Stevens undisputedly had the authority to initiate the disciplinary process against hourly employees. (Stevens Dep. Exs. 26-42.) For example, he documented employee Joyce Dubon's discipline as a formal written warning upon which her termination was based. (*Id.* at 214-15, Ex. 26.) What is more, Host discipline records show that Stevens routinely disciplined associates,

19

issuing them corrective action warnings for being late, acting rude, or not showing up for work, among other reasons.  (Stevens Dep. Exs. 26-42.)  And when discipline rose to the level of termination, Stevens' input was solicited and assigned significant value.  He provided key recommendations, for instance, in the termination of Dubon, Daniel Lee, and Kadeen Nelson.  (*Id.* Exs. 26, 40, 41, 42.)

Courts have found such authority sufficient to comport with the regulatory requirement that that the executive's recommendations and suggestions be given particular weight.  *See, e.g.*, *Lovelady v. Allsup's Convenience Stores, Inc.*, 304 Fed. Appx. 301, 305-06 (5th Cir. 2008) (managers who did not have authority with regard to employment decisions nevertheless satisfied the "particular weight" test where they made recommendations which were almost always followed); *Burson v. Viking Forge Corp.*, 661 F. Supp. 2d 1010, 1016 (N.D. Ohio 2009) (shift supervisors recommendations given particular weight when they initiated disciplinary process by first issuing verbal warning to employees); *Rainey v. McWane, Inc.*, 552 F. Supp. 2d 626, 632 (E.D. Tex. 2008) (particular weight test met where, among other things, supervisors were responsible for initiating disciplinary process).  The undisputed facts thus establish that Stevens issued discipline on his own, or that his suggestions and recommendations as to employee discipline, at the very least, were given particular weight.

Given Stevens' responsibilities over the employees at his stores, the fourth prong of the executive exemption is satisfied.  Having met all of the factors for the executive exemption, Stevens is not entitled to overtime compensation under the FLSA, and Host is entitled to the entry of summary final judgment in its favor.

**C.     Host Is Also Entitled To Summary Judgment Because Stevens Is Exempt Under The Administrative Exemption Of The Flsa**

Stevens is also exempt under the administrative exemption of the FLSA.  To show that an employee was employed in an administrative capacity, the employer must demonstrate that the employee is:

(1)     Compensated on a salary or fee basis at a rate of not less than $455 per week;

(2)     Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and,

(3)     Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).

**1.     Host Satisfies The Salary Basis Test With Respect To Stevens**

As set forth *supra* in Section IV(B) at p. 4, Stevens was paid a salary for all hours worked in excess of $455 per week.  Host, thus, has met the initial factor of the administrative exemption.

**2.     Stevens' Primary Duty (Alternatively Or In Addition To Management) Was The Performance Of Non-Manual Work Directly Related To The Management Or General Business Operations Of Host**

The DOL's regulations instruct that qualifying work includes, but is not limited to:

> [W]ork in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R § 541.201(b).  Stevens explicitly stated that he was responsible for performing office work (*i.e.*, paperwork) that was integral to the general business operations of the stores, such as:

ordering product for the stores (Stevens Dep. 76); ensuring food safety by documenting temperatures (*Id.* at 239:13-240:2); reviewing documentation of new employees start dates (*Id.* at 110:9-18); documenting all incidents immediately (*Id.* at 166); documenting employee discipline when necessary (*Id.* Exs. 26-42); and competing bank paperwork for associates (*Id.* at 92:22).

Stevens was responsible also for quality assurance at the stores, and he performed this duty daily. (*Id.* at 161-164.) Simply, he testified that a major function of his job was to move among the three units as needed to ensure smooth operations (*Id.* at 102:8-11.) Thus, Stevens' own testimony conclusively establishes that his primary work duties were "directly related to the management or general business operations of [his] employer." 29 C.F.R. § 541.201(a). *See Viola v. Comprehensive Health Mgmt., Inc.*, 441 Fed. Appx. 660, 662–63 (11th Cir. 2011) (*per curiam*) (holding that an employee who arguably performed four of the functions listed in § 541.201(b) was covered by the administrative exemption as a matter of law); *see also Farnham v. Riimic, LLC*, Case No. No. 12–60153–CIV, 2012 WL 5187851 at * 3 (S.D. Fla. Oct. 19, 2012) (manager qualified for administrative exemption when she performed duties relating to, among other things, personnel management, employee relations and benefits, research, safety and health, insurance, purchasing and procurement, and financial matters).

### 3.    Stevens' Primary Duty Included The Exercise Of Discretion And Independent Judgment With Respect To Matters Of Significance

For an employee to qualify for the administrative exemption, his "primary duty must include the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.202(a); *see Id.* § 541.200(a)(3). Generally, "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." *Id.* § 541.202(a). Stevens did just this on a daily basis. He explained that as

assistant manager, it was his responsibility to run the day-to-day operations of the units (Stevens Dep. 203:13-19).  He said that he maintained an elevated level of customer service (*Id.* at 103:6-14.); he performed walk-throughs and evaluated employee performance at all three restaurants (*Id.* at 165); he documented work-place injuries (*Id.* at 184-85); he documented and processed employee discipline (*Id.* at 215, 217, 221, 224, 227, 228, 236); he evaluated whether his stores' supplies were on par (*Id.* at 76); he audited servers and cashiers (*Id.* at 86-87); he monitored traffic flow (*Id.* at 161); he monitored daily staffing (*Id.* at 162); he monitored product availability (*Id.* at 162); he maintained awareness of the general conditions of his units (*Id.* at 163); he provided direction and support to his employees (*Id.* at 163); and he corresponded with his store manager and general manager about employee performance (*Id.* at 163-64).  Thus, Stevens regularly exercised discretion and independent judgment on significant matters directly related to the management or general business operations of the units.  *See Stricker v. Eastern Off Road Equipment, Inc.*, 935 F. Supp. 650, 659 (D. Md. 1996) (administrative exemption test met where store manager, either alone, or with a co-manager, was responsible for the "day-to-day operations" of the store, which included ensuring that the store was neither over- nor under-stocked with merchandise, that inventory was ordered in a timely fashion, that the store opened and closed on time, and that customers were satisfied).

Moreover, while Stevens may argue that he did not exercise discretion and independent judgment because his supervisors had to approve any decisions or recommendations he made, this argument is unavailing.  Courts have routinely held that while an administrative employee must exercise independent decision-making, the fact that his superiors may review and approve the employee's decisions before they are final "does not disqualify [the] employee from the

administrative exemption." *Viola*, 441 Fed. Appx. at 664; *see also Farnham*, 2012 WL 5187851 at * 3.

Accordingly, even if Stevens did not qualify for the executive exemption, he is exempt as an administrative employee, and Host is entitled to summary final judgment.

## V.  CONCLUSION

The record demonstrates conclusively that Stevens primarily performed exempt duties as an Assistant Store Manager.  While Stevens' performance of non-managerial tasks may have helped his stores run more efficiently and made customers' experiences more enjoyable, it is clear that Stevens' performance of managerial/administrative tasks was *essential* to both his job and Host's operations.   Thus, for the reasons set forth above, Host respectfully requests that the Court grant the instant Motion.

Respectfully submitted,

*s/ Patrick M. Muldowney*
Patrick M. Muldowney
E-mail:  pmuldowney@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 South Orange Avenue
SunTrust Center, Suite 2300
P.O. Box 112
Orlando, FL  32802-0112
Phone: (407) 649-4000
Fax: (407) 841-0168

Gregory V. Mersol
**BAKER & HOSTETLER LLP**
3200 PNC Center
1900 East Ninth Street
Cleveland, OH  44114-3485
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
gmersol@bakerlaw.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 26, 2015, a true and correct copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*s/Patrick M. Muldowney*
Patrick M. Muldowney

606410407.1