UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
EASTON STEVENS,

                          Plaintiff,                     **MEMORANDUM & ORDER**

    - against -

                                                       10-CV-3571 (ILG) (VVP)

HMSHOST CORPORATION, et al.,

                          Defendants.
-------------------------------------------------------x
GLASSER, Senior United States District Judge:

      Plaintiff Easton Stevens brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., against defendants HMSHost Corporation, Host International, Inc., and Host Services of New York. According to plaintiff, although he performed primarily non-managerial work for defendants, they used his official job title as an assistant manager as an excuse to avoid paying him overtime. Defendants now move for summary judgment, pursuant to Federal Rule of Civil Procedure 56, claiming that plaintiff's actual duties show as a matter of law that he was exempt from the FLSA's overtime pay requirements. For the following reasons, the motion is DENIED.

## BACKGROUND

      The following facts are undisputed except where otherwise noted. Defendants manage and operate food and beverage concessions at numerous airports, highway travel facilities, and shopping malls across the United States. Declaration of Coleman Lauterbach, Defs.' Ex. A, Dkt. No. 197-1 (hereinafter "Lauterbach Decl.") ¶ 4. Their locations include a wide variety of offerings, ranging from "grab and go" food outlets to fast food venues, casual sit-down restaurants, bars, wine bars, brew pubs, and fine dining establishments. Id. ¶ 6. Between 2008 and 2010, plaintiff worked for

1

defendants as an Assistant Food & Beverage Manager I ("assistant manager" or "ASM") at four different concessions defendants managed in Terminal 3 of John F. Kennedy International Airport ("JFK"). Deposition of Easton Stevens, Defs.' Ex. C, Dkt. No. 197-3 (hereinafter "Pl. Dep.") at 51:13-16, 56:18–57:10.[1] During that time period, he worked at least 50 hours every week and was not paid overtime. See id. at 116:24–117:9.

The precise job duties that defendants assign their assistant managers vary greatly depending on factors such as the type or size of facility where the ASMs work, the experience of the junior associates in those facilities, the preferences of the location's general manager, and the ASMs' own capabilities. See Lauterbach Decl. ¶¶ 24-26, 30. An ASM I (such as plaintiff) is the lowest level of ASM, "and as such may not have the ability to solve the types of managerial problems that can be addressed by a more experienced [ASM]." See id. ¶ 26. An ASM I typically "support[s] the manager of a store with low sales volume and routine operations," and, in that capacity, "[a]ssigns work responsibilities, prepares schedules, . . . ensures all shifts are covered," and "[r]esolves routine questions and problems [while] refer[ring] more complex issues to higher levels." Pl. Dep., Ex. 19. While defendants crafted the job descriptions for ASMs to track the definitions of overtime-exempt employees listed in the implementing regulations of the FLSA, they were also aware that ASMs, in practice, undertook non-exempt work at times. See Lauterbach Decl. ¶ 21; Deposition of Coleman Lauterbach, Defs.' Ex. B, Dkt. No. 197-2 (hereinafter "Lauterbach Dep.") at 59:13-17, 97:8-24.

There were at least two other ASMs working with plaintiff at defendant's concessions in the mezzanine of Terminal 3 in JFK, along with an unknown number of

---

[1] Defendants' Local Civil Rule 56.1 statement of undisputed facts, Dkt. No. 196 (hereinafter "DSOF"), lists only three concessions where plaintiff worked as an ASM, but plaintiff testified that he worked at a fourth concession until it was replaced and also did minimal work at that replacement concession to cover for another manager if needed. Compare DSOF ¶ 11 with Pl. Dep. at 97:21–98:4, 156:23–157:11.

2

hourly-wage employees. See id. at 65:8-19. Plaintiff was "certified" to work at Burger King restaurants, but was, in practice, required to divide his time between the Burger King and two other concessions in the mezzanine for 70 to 75% of his ten-hour shift (which was initially eight hours long but expanded to ten shortly after he began working there). See id. at 65:4-7, 93:20–96:13, 101:14–102:16. While defendants describe plaintiff's responsibilities in moving between the stores as providing "oversight" to junior employees, see DSOF ¶ 12, plaintiff testified that the work involved "mak[ing] sandwiches, . . . do[ing] sodas[, or] be[ing] the second cashier if you only have one" in an attempt to "get the customers in and out." See Pl. Dep. at 102:2-11. For the remaining 25 to 30% of plaintiff's shift, he was "receiving banks,[2] just making sure the units are clean, talking to customers," and otherwise monitoring inventory or completing paperwork. See Pl. Dep. 103:11-14, 203:20–204:4.

Plaintiff testified that, on at least one occasion, he unilaterally decided how best to distribute staff among the concessions depending on employee availability,[3] but also claimed that he was required to follow his superiors' directives on matters such as whether overtime pay should be authorized. Compare id. at 188:12–189:5 with 195:22–197:20. While plaintiff had the authority to issue disciplinary warnings to junior employees, these warnings were, according to him, issued pursuant to requests from plaintiff's superiors rather than on his own initiative. See id. at 227:10–231:4. Plaintiff

---

[2] Although the parties do not define the term "bank" as plaintiff uses it, they indicate that it refers to "bank paperwork" that needed to be filled out for other employees. See DSOF ¶ 35.

[3] Plaintiff's attempt to classify this decision as a "recommendation" is not credible, even drawing all reasonable influences in his favor. Several other emails between plaintiff and his superiors on the subject of staffing and/or overtime do feature plaintiff apparently seeking guidance or approval of his proposed course of action, but this particular email does not: it states that plaintiff will close one store until lunch and distribute staff accordingly. Compare Pl. Dep., Ex. 12 with Exs. 20 & 22.

3

had no authority to hire or fire subordinates and did not participate in their training. See id. at 217:22–218:3, 245:21-24.

Plaintiff's movement between concessions was directed by his supervisors, who would "call and say [']I need you to be in that store.[']" Id. at 103:3-5. When asked whether he "might have to jump in" to do work such as making and serving food at a particular concession, plaintiff responded "[i]t's not if. I have to. It's part of the requirement, that your supervisor tells you that you have to be in the units working." Id. at 114:8-17. While in any particular "unit," plaintiff noted, he was "just [in] one place doing one thing." Id. at 42:11-15.

Plaintiff filed this action on August 2, 2010, purporting to proceed on behalf of himself and others similarly situated. See Compl. (Dkt. No. 1). An "opt-in" class of similarly-situated individuals was conditionally certified by the Honorable Viktor V. Pohorelsky, U.S.M.J., on June 15, 2012, in an Order that was upheld by this Court on appeal on October 10, 2012. See Dkt. Nos. 51 & 56. Following extensive discovery, the parties cross-moved for either final certification or decertification of the class, as well as for summary judgment on certain class-wide claims, and this Court decertified the class on August 27, 2014, rendering the summary judgment motions moot. See Dkt. No. 174. The Second Circuit dismissed plaintiff's interlocutory appeal of that decision pursuant to the collateral order doctrine for lack of jurisdiction on January 26, 2015, and this Court denied plaintiff's motion to certify the order for an interlocutory appeal taken pursuant to 28 U.S.C. § 1292(b) on March 4, 2015. See Dkt. Nos. 190 & 194. Defendants filed this motion on May 26, 2015, plaintiff opposed it on June 24, 2015, and the Court heard oral argument on July 8, 2015. See Dkt. Nos. 190-201.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party. . . . A fact is material if it might affect the outcome of the suit under the governing law." Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks and citation omitted). The party moving for summary judgment bears the burden of establishing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In deciding the motion, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (internal citation omitted).

## DISCUSSION

The FLSA requires employers to pay employees who engage in commerce or are "employed in an enterprise engaged in commerce or in the production of goods for commerce" overtime pay for any time they are required to work beyond a workweek of forty hours "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1). Employees covered by the FLSA may sue employers who fail to provide overtime pay to recover "the amount of . . . their unpaid overtime compensation" along with liquidated damages, costs, and fees as the circumstances dictate. Id. § 216(b). Several categories of employees are exempt from the FLSA's overtime pay requirements, however, including those who are employed "in a bona fide executive [or] administrative" capacity. Id. § 213(a)(1). Defendants argue that plaintiff is both an executive and administrative employee as those terms are

defined by the FLSA's implementing regulations, and therefore cannot prevail on his overtime claims as a matter of law.

"The exemption question under the FLSA is a mixed question of law and fact. The question of how the employees spent their working time is a question of fact. The question of whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law." Pippins v. KPMG, LLP, 759 F.3d 235, 239 (2d Cir. 2014) (quoting Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012)). The burden of proving an employee exempt from the FLSA rests on the employer. E.g., Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 104 (2d Cir. 2010). Exemptions are to be "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." Bilyou v. Dutchess Beer Distribs., Inc., 300 F.3d 217, 222 (2d Cir. 2002) (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)). Using this framework to evaluate the evidence the parties have presented, the Court finds that issues of material fact preclude granting summary judgment to defendants.

I. **Executive Exemption**

A worker is employed in a "bona fide executive capacity" if he is (1) paid no less than $455 per week on a salary basis, (2) engaged in "management" as his "primary duty," (3) customarily and regularly directing the work of two or more other employees, and (4) capable of hiring or firing other employees (or his suggestions on any "change of status of other employees" are given "particular weight"). 29 C.F.R. § 541.100(a). While plaintiff concedes he satisfies the first factor of the executive exemption test, he denies that the other three factors apply to him. The Court discusses each in turn.

A. **Primary Duty**

In determining whether exempt work is an employee's primary duty, the FLSA's implementing regulations urge consideration of such non-exclusive factors as (1) the relative importance of the exempt duties as compared with other types of duties, (2) the amount of time spent performing exempt work, (3) the employee's relative freedom from direct supervision, and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.  See Callari v. Blackman Plumbing Supply, Inc., 988 F. Supp. 2d 261, 277 (E.D.N.Y. 2014) (quoting 29 C.F.R. § 541.700(a)).  Consideration of these factors is a highly fact-intensive inquiry "to be made on a case-by-case basis in light of the totality of the circumstances," and no one factor is dispositive.  E.g., Martinez v. Hilton Hotels Corp., 930 F. Supp. 2d 508, 523 (S.D.N.Y. 2013); Johnson v. Big Lots Stores, Inc., 604 F. Supp. 2d 903, 908 (E.D. La. 2009); see also 29 C.F.R. § 541.700(c) (noting that assistant managers who closely supervise employees but nevertheless spend more than 50% of their time performing nonexempt tasks such as running the cash register may still have exempt activities as their primary duties).

Ordinarily, courts consider "a developed trial record" to determine an employee's primary duty.  Clougher v. Home Depot U.S.A., Inc., 696 F. Supp. 2d 285, 290 (E.D.N.Y. 2010).  Where, as here, however, defendants rely almost exclusively on "bits and pieces of [plaintiff's] employment history [gleaned] from his deposition[,] . . . [t]he material disputes of fact resulting from the undeveloped summary judgment record become manifest in even the most cursory primary duty analysis."  See id. at 290-91 (internal quotation marks omitted).

1. **Time Spent Performing Nonexempt Work**

Defendants describe the non-managerial work plaintiff claimed he performed for 70 to 75% of his shifts (such as making sandwiches or manning cash registers) as "monitor[ing] operations," but this gloss on his testimony is simply not plausible. Compare Defs.' Mem. (Dkt. No. 195) at 14 with Pl. Dep. at 102:2-11.  Although defendants attempt to salvage this interpretation by claiming plaintiff was simultaneously providing oversight to his subordinates while performing nonexempt work, plaintiff's testimony is that he was "just [in] one place doing one thing," not multitasking.  See Pl. Dep. at 42:11-15.  Finally, while defendants argue that plaintiff was performing nonexempt work voluntarily out of a sense of obligation, plaintiff claims that he was simply following his superiors' instructions.  See id. at 103:3-5, 114:8-17 ("your supervisor tells you, you have to be in the units working").[4]  Left with these obvious disputes of fact, the Court cannot determine what amount of time plaintiff regularly spent performing nonexempt work, rendering summary judgment inappropriate.

2. **Relative Importance of Exempt Duties**

Even if the Court were to find the lion's share of plaintiff's work to be nonexempt, defendants argue, his limited managerial activities, such as completing bank paperwork or assigning staff to various concessions, were so vital that "the stores simply could not run at all" without him, which warrants exempting him from overtime pay.  See Defs.' Mem. at 14.  Plaintiff, however, claims that such activities were "rare or performed in strict accordance with nondiscretionary corporate policy or at his supervisor's behest." See Clougher, 696 F. Supp. 2d at 291.  Some of the activities plaintiff described in his deposition, such as his unilateral decision to keep a concession closed for breakfast

---

[4] Indeed, a reasonable observer might find the fact that plaintiff was disciplined for watching the World Cup on television instead of addressing a long line at the Burger King where "only two associates [were] working" as supportive of plaintiff's claim that he was regularly expected and required to perform nonexempt work.  See Pl. Dep. at 240:13-22, Ex. 45.

8

when not enough staff arrived on a given morning, may indicate that he was "solely in charge of [his] restaurants and [was] the 'boss' in title and fact." See Donovan v. Burger King Corp., 675 F.2d 516, 522 (2d Cir. 1982). On other occasions, however, he clearly stated that he was not empowered to make managerial decisions but merely functioned as a conduit for the directives of his supervisors. See, e.g., Pl. Dep. at 195:22–197:20 (allowing hourly associates to work overtime), 199:3-20 (firing hourly associates). Since it is far from clear whether plaintiff's managerial obligations were truly important enough to his workplace to classify them as his primary duties, summary judgment must be denied.

### 3. Freedom from Direct Supervision

As discussed above, since there is a material dispute over the extent to which plaintiff operated independently of his supervisors' directives, the Court cannot state as a matter of law that plaintiff made or participated in "decisions of the kind and quality normally made by persons formulating policy within [his] spheres of responsibility," further clouding the disputed issue of plaintiff's primary duty. See Clougher, 696 F. Supp. 2d at 291; Pl. Dep. at 247:13-14 (testifying that, rather than being empowered to make decisions, "you have to ask. Always").

### 4. Plaintiff's Salary in Comparison to Nonexempt Employees' Wages

Defendants' representative testified that, in general, it is less expensive for them to have hourly associates perform nonexempt work exclusively (and pay them for any overtime they incur) than it would be to have salaried managers perform hourly associate work. See Lauterbach Dep. at 57:6-13. Plaintiffs correctly point out, however, that defendants have failed to disclose the specifics of their operations at JFK, such as the wages hourly associates are paid at the airport or the amount of time, in practice, an

9

ASM might be required to work beyond his or her typical shift.  See Pl.'s Mem. (Dkt. No. 198) at 16.  For example, although plaintiff testified that he worked a ten-hour shift, he also noted that he "would never leave work [at] 2 o'clock" when his 4 a.m. to 2 p.m. shift was scheduled to end.  See Pl. Dep. at 119:5.  Since there is no way to determine from the record presently before the Court whether plaintiff's salary was comparable to the hourly wages of nonexempt employees, or the extent to which those nonexempt employees' duties overlapped with plaintiff's, "factual questions predominate and summary judgment is denied."  Clougher, 696 F. Supp. 2d at 294.

### B. Customarily and Regularly Directing the Work of Two or More Employees

Unlike the question of plaintiff's primary duty, there is no genuine material dispute between the parties that plaintiff customarily and regularly directed the work of two or more employees.  Under the FLSA's implementing regulations, "'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant."  29 C.F.R. § 541.701.  Plaintiff's emails to his superiors demonstrate that he was responsible for assigning (or implementing his supervisor's assignment of) two or more hourly associates to various concessions on a greater-than-occasional basis.  See, e.g., Pl. Dep. at 188:12–189:5, 208:7–209:18 (implying that "three people for three units" was a typical short-staffing situation).  Since all four factors listed in 29 C.F.R. § 541.100(a) must be satisfied for defendants to prevail on their executive exemption defense, however, the lack of a material dispute over this issue does not warrant dismissal of plaintiff's suit.

### C. Input into Hiring & Firing

Defendants' perfunctory claims that the disciplinary notices plaintiff wrote were "assigned significant value" by his superiors when firing junior employees (Defs.' Mem. at 20) are contradicted by plaintiff's own assertions that he merely complied with his supervisors' directives in writing such notices and did not make recommendations concerning hiring or firing. See, e.g., Pl. Dep. at 217:22–218:3, 227:10–231:4. On this limited record, the Court cannot determine, as a matter of law, what role plaintiff played in the "change of status of other employees," and summary judgment is therefore inappropriate. See 29 C.F.R. § 541.100(a)(4).

## II. Administrative Exemption

A worker is employed in a bona fide administrative capacity if he (1) is paid no less than $455 per week on a salary basis, (2) performs office or non-manual work directly related to the management or general business operations of the employer or the employer's customers as his primary duty, and (3) exercises discretion and independent judgment with respect to matters of significance as part of that primary duty. 29 C.F.R. § 541.200(a).

Just as with the executive exemption, there are genuine material disputes between the parties as to the contours of plaintiff's primary duty that warrant denial of summary judgment as to defendants' administrative exemption defense. Defendants argue that plaintiff's activities such as the documentation of workplace injuries, processing of employee discipline, and monitoring of daily staffing all involved the exercise of independent judgment over significant matters. See Defs.' Mem. at 23. Plaintiff argues in turn that these tasks were not plaintiff's primary duty, or, even if they were, amounted to little more than "recording or tabulating data," which the FLSA's implementing regulations do not regard as the exercise of discretion or independent

11

judgment. See Pl.'s Mem. at 20-21 (quoting 29 C.F.R. § 541.202(e)). With plaintiff's conflicting ipse dixit effectively constituting the entirety of the record evidence on his primary duties, the Court cannot conclude as a matter of law that he is exempt from the FLSA's overtime pay requirements, and summary judgment must be denied.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is DENIED. The parties must contact the Court's Case Manager to schedule a final pretrial conference on a mutually agreeable date by no later than August 19, 2015.

SO ORDERED.

Dated: Brooklyn, New York
August 5, 2015

/s/
I. Leo Glasser
Senior United States District Judge