**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

Easton Stevens, et al.,                                                     :

                                                                                        :

                Plaintiffs,                                  : Civil Action No. 1:10-cv-03571-ILG-PK

                                                                                        :

    -vs-                                                                :

                                                                                        :

HMSHost Corporation, et al.,                                      :

                                                                                        :

              Defendants.                               :

-------------------------------------------------------------X

**MEMORANDUM IN SUPPORT OF THE PARTIES' JOINT MOTION FOR
PRELIMINARY APPROVAL OF THE SETTLEMENT (INCLUDING AN AWARD OF
ATTORNEYS' FEES AND EXPENSES, AND PAYMENT OF THE CLAIMS
ADMINISTRATOR'S COSTS AND EXPENSES), APPROVAL OF THE NOTICE OF
PROPOSED SETTLEMENT OF LAWSUIT TO BE SENT TO THE PLAINTIFFS, AND
<u>THE SETTING OF A FINAL FAIRNESS HEARING</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................................1

II.   PROCEDURAL AND LITIGATION HISTORY .................................................3

III.  SUMMARY OF THE SETTLEMENT TERMS ...................................................7

IV.   ARGUMENT ..........................................................................................................9

    A.   The Court Should Grant Final Approval Of the Settlement ...................................9

    B.   The Settlement Resolves Contested Litigation Over A Bona Fide Dispute ..........10

    C.   The Settlement Is A Reasonable Compromise of Contested Issues .....................11

        1.   The Settlement Falls Squarely Within The Range Of Possible Recovery ..................................................................................................12

        2.   The Settlement Will Enable The Parties To Avoid Expenses ..................13

        3.   The Settlement Will Mitigate Serious Litigation Risks For The Parties ........................................................................................................14

        4.   The Settlement Resulted From Arm's Length Negotiations Between Experienced Counsel ...............................................................15

        5.   The Settlement Was Not The Product Of Fraud Or Collusion .................15

    D.   Plaintiffs' Attorneys' Fees Will Be Reasonable ...................................................16

        1.   Stevens' Counsel Has Expended Significant Time and Labor Prosecuting This Action And The Ensuing Spin-Off Litigation ..............17

        2.   This Nationwide FLSA Action Involves Complex Legal Issues...............18

        3.   The Risk of Receiving an Adverse Ruling on the Merits And/Or Decertification Of The Collective Is Significant ......................................19

        4.   The Parties Are Represented by Counsel with Significant Experience in Wage and Hour Litigation ......................................................................19

        5.   Class Counsel's Request for Attorneys' Fees Is Reasonable and Accords with Similar Awards in This Circuit.........................................................21

        6.   Public Policy Considerations Favor Awarding Class Counsel Attorneys' Fees ........................................................................................................22

        7.   The Lodestar Cross Check Further Supports an Award to Class Counsel of 33% of the Settlement Fund....................................................................23

E.    The Payment of Costs And The Settlement Expenses From The Settlement Fund Will Be Appropriate ..................................................................................24

F.    The Requested Service Awards to The Named Plaintiffs Would Be Appropriate ...........................................................................................................24

II.    CONCLUSION.............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alli v. Boston Mkt. Corp.*,
  No. 10-cv-0004 (Order, Dkt. 177) (D. Conn. Apr. 13, 2012)...........................................13, 21

*Barrentine v. Ark.-Best Freight Sys.*,
  450 U.S. 728 (1981) ...................................................................................................18

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................................18

*Bell v. Citizens Fin. Group, Inc.*,
  2:10-cv-00320 (W.D. Pa. 2013)..................................................................................15

*Bozak v. FedEx Ground Package Sys.*,
  2014 U.S. Dist. LEXIS 106042 (D. Conn. July 31, 2014)......................................11

*Capsolas v. Pasta Res. Inc.*,
  2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) .................................21, 25

*Chambery v. Tuxedo Junction Inc.*,
  2014 U.S. Dist. LEXIS 101939 ..................................................................................24

*Cheeks v. Freeport Pancake House, Inc.*,
  796 F.3d 199 (2d Cir. 2015)...........................................................................................9

*Clark v. Ecolab*,
  2009 U.S. Dist. LEXIS 76613 (S.D.N.Y. May 11, 2010) .......................................21

*Davis v. J.P. Morgan Chase & Co.*,
  827 F. Supp. 2d 172 (W.D.N.Y. 2011) ....................................................................21

*deMunecas v. Bold Food, LLC*,
  2010 U.S. Dist. LEXIS 87644 (S.D.N.Y. Aug. 23, 2010) ......................................21

*Duchene v. Michael Cetta, Inc.*,
  2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009)......................................21

*Dupler v. Costco Wholesale Group*,
  705 F. Supp. 2d 231 (E.D.N.Y. 2010) ......................................................................22

*Faican v. Rapid Park Holding Corp.*,
  2010 U.S. Dist. LEXIS 64382 (E.D.N.Y. June 29, 2010) ......................................21

*Flores v. Anjost Corp.*,
   2014 U.S. Dist. LEXIS 11026 (S.D.N.Y. Jan. 28, 2014) ................................................21, 24

*Forauer v. Vt. Country Store, Inc.*,
   2015 U.S. Dist. LEXIS 5604 (D. Vt. Jan. 16, 2015) ...............................................................11

*Frank v. Eastman Kodak*,
   228 F.R.D. 174 (W.D.N.Y. 2005)............................................................................................22

*Galantowicz v. Rhino Room, Inc.*,
   No. 12-cv-971S (Decision and Order, Dkt. No. 69, ) (W.D.N.Y. Feb. 14,
   2014) (Skretny, *J.*) ..................................................................................................................16

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................................20

*Goldberger v. Integrated Res.*,
   209 F.3d 43 (2d Cir. 2000)......................................................................................................16

*Guaman v. Ajna-Bar NYC*,
   2013 U.S. Dist. LEXIS 16206 (S.D.N.Y. Feb. 5, 2013)..........................................................21

*Henry v. Quicken Loans, Inc.*,
   Case No. 2:04-cv-40346-SJM-MJH (E.D. Mich. 2011)..........................................................15

*Hens v. ClientLogic Operating Corp.*,
   2010 U.S. Dist. LEXIS 139126 (W.D.N.Y. Dec. 19, 2010) (Skretny, *J.*)...............9, 11, 15, 21

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003)......................................................................................24

*Johnson v. Brennan*,
   2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011)........................................... *passim*

*Lizondro-Garcia v. Kefi L.L.C.*,
   300 F.R.D. 169 (S.D.N.Y. 2014) ............................................................................................11

*Lovaglio v. W & E Hosp.*,
   2012 U.S. Dist. LEXIS 94077 (S.D.N.Y. July 5, 2012) ..........................................................21

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ...........................................................................................9, 16

*McKee v. PetSmart, Inc.*,
   1:12-cv-01117-SLR-SRF (D. Del. July 27, 2015).................................................................12

*McMahon v. Olivier Cheng Catering & Events, L.L.C.*,
   2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 2, 2010) ........................................................21

iv

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
    2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009) ......................................................21

*Morgan v. Family Dollar Stores*, *Inc.*,
    551 F.3d 1233 (11th Cir. 2008) .......................................................................................15

*Palacio v. E\*Trade Fin. Corp*.,
    2012 U.S. Dist. LEXIS 88019 (S.D.N.Y. June 22, 2012) .....................................................19

*Parker v. Jekyll & Hydye Entm't Holdings., L.L.C*.,
    2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb 9, 2009) ...............................................18, 22

*Perkins v. Southern New England Tel. Co. Inc*.,
    No. 3:07-00967 (Judgment, Dkt. 572) (D. Conn. Oct. 24, 2011) ..........................................15

*Prasker v. Asia Five Eight LLC*,
    2010 U.S. Dist. LEXIS 1445 (S.D.N.Y. Jan. 4, 2010) .........................................................21

*In re Prudential Ins. Co. Am. Sales Litig*.,
    148 F.3d 283 (3d Cir. 1998)..........................................................................................23

*Sewell v. Bovis Lend Lease LMB, Inc*.,
    2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 20, 2012).......................................................23

*Spicer v. Pier Sixty LLC*,
    2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012)....................................................21

*Stallard v. Fifth Third Bank*,
    No. 2:12-cv-01092 (MRH) (final approval obtained on February 25, 2015 for
    $3.25 million for 541 plaintiffs)......................................................................................12

*Stefaniak v. HSBC Bank USA, N.A*.,
    2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008) (Skretny, *J*.) ...................16, 21, 24

*Stillman v. Staples, Inc*.,
    2009 U.S. Dist. LEXIS 42247 (D.N.J. May 11, 2009) .........................................................15

*In re Sumitomo Copper Litig*.,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999)................................................................................22

*Taft v. Ackermans*,
    2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007) .......................................................19

*Thornhill v. CVS Pharm., Inc*.,
    2014 U.S. Dist. LEXIS 37007 (S.D.N.Y. Mar. 20, 2014) ...............................................14, 15

*Tiro v. Public House Invs., LLC*,
    2013 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sept. 10, 2013).............................................. *passim*

*Whittington v. Taco Bell of Am., Inc.*,
 Civil Action No. 10-cv-01884-KMT-MEH, 2013 U.S. Dist. LEXIS 161665
 (D. Colo. Nov. 13, 2013) ................................................................................................12

*Wolinsky v. Scholastic Inc.*,
 900 F. Supp. 2d 332 (S.D.N.Y. 2012) ..........................................................................11

**Statutes**

29 U.S.C. § 213(a)(1) ............................................................................................................6

Fair Labor Standards Act ("FLSA") ................................................................. *passim*

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................3, 8, 9

Fed. R. Civ. P. 30(b)(6) ...............................................................................................3, 4, 17

## I.      __INTRODUCTION__

Plaintiff, Easton Stevens, on behalf of himself and former opt-ins herein (collectively,

"Plaintiffs"), and Defendants, HMSHost Corporation and Host International, Inc., (collectively,

"Host" or "Defendants") (together with Stevens, the "Parties"), hereby move for preliminary

approval of the settlement in this case.  And although the present motion is for preliminary

approval, this memorandum will set forth, with detail and particulars usually addressed only at

final approval, the propriety of all the items of relief sought.  Doing so, the Parties believe, will

best enable the creation of a record supporting all the particulars of the settlement.

In August 2010, Stevens filed this putative collective action case alleging that Defendants

had violated the Fair Labor Standards Act ("FLSA") and the New York state law by improperly

classifying him, and other Assistant Store Managers ("ASMs") at Host, as exempt and failing to

pay them overtime for hours worked over 40 per workweek.  (*See* Dkt. No. 1.)  On October 10,

2012, the Court granted Plaintiffs' Motion for Conditional Certification (Dkt. No. 56) and,

following the issuance of notice, ultimately 274 individuals joined as opt-ins.  On August 26,

2014, the Court decertified the collective action, effectively dismissing the claims of all Plaintiffs

except for Stevens.  Subsequently, Plaintiffs sought review of this Court's decertification order

with the United States Court of Appeals for the Second Circuit.  Defendants moved to dismiss

the appeal.

Following the dismissal of the appeal by the Second Circuit, several dozen former opt-in

Plaintiffs ("Spin-Off Plaintiffs") filed individual actions in various jurisdictions throughout the

country beginning in March 2015 based on the same facts and legal theories as the original

collective action.  (See Exhibit A, Table of Individual Actions by Former Opt-in Plaintiffs).  On

or about July 17, 2015, the Parties reached a tolling agreement regarding the individual claims of

approximately 26 additional former opt-in plaintiffs ("Tolled Plaintiffs") considering filing

individual FLSA claims based on the same theories and facts as the original collective action. (See Exhibit B, Tolling Agreement). Subsequently, as the various Spin-Off Plaintiffs proceeded into discovery and motion practice, and even pretrial proceedings, the Parties reached a global settlement (the "Settlement") covering all plaintiffs, including Stevens, the Spin-Off Plaintiffs, Tolled Plaintiffs, and all former opt-in Plaintiffs.  (See Exhibit C, Settlement Agreement).

At the settlement conference held on January 7, 2016, the Court indicated that it would entertain the Parties' motion to approve the Settlement; however, it stated that it seemed proper that Plaintiffs other than Stevens would have to file new consents to join in the Settlement since, in the Court's view, they were no longer parties to the instant action.  To that end and after a comprehensive negotiation process, the Parties have prepared for the Court's approval a draft Notice of Proposed Settlement of Lawsuit ("Notice") to be provided to all Plaintiffs. (See Exhibit D, Proposed Notice of Settlement).  The Notice describes the terms of the settlement and each person's approximate award to permit the Plaintiffs to make informed choices about whether to participate in the Settlement.  Upon preliminary approval by the Court, Stevens' counsel, Klafter Olsen and Lesser LLP ("KOL"), will provide the Notice to all Spin-Off Plaintiffs and Tolled Plaintiffs.  Meanwhile, the Settlement Administrator, Simpluris, will mail the Notice to all remaining Plaintiffs.  After providing Plaintiffs with at least sixty (60) days in which to consider and return the Notice, the Parties propose that the Court set a final fairness hearing for the purpose of determining whether the settlement should be finally approved by the Court as fair, reasonable, and adequate.

The Parties submit that the structure suggested by the Court at the January 7, 2016 conference is an appropriate and proper mechanism to resolve the litigation. All of the settling Plaintiffs have, at least arguable claims remaining against Defendants (and a number of them

609352010.1

2

had, as noted, started individual cases).  The decision to reconstitute, for settlement purposes, the decertified collective is a matter of judicial efficiency as to which the parties agree (and HMSHost will not receive a release from any individual who fails to join the settlement collective).  Not unlike Rule 23 class actions that settle when the court denies certification (because, there, too, the class claims remain extant), the Parties see no legal impediment from proceeding in this agreed-upon manner that will save both the parties and the judicial system (including numerous federal courts across the country) the need to have these cases litigated. Alternatively, and in essence, the proposed procedure is no different than if one of the dismissed Opt-Ins proceeded to file a new putative collective action and the other Participating Plaintiffs joined that case or the case was settled even before a collective action had originally been conditional certified (a circumstance which sometimes occurs).

## II.   **PROCEDURAL AND LITIGATION HISTORY**

For the Court's convenience, the Parties here summarize the history of the litigation:

Plaintiff Stevens filed this case on August 2, 2010, alleging that he and other ASMs were improperly classified as exempt from overtime and asserting claims for unpaid overtime under the FLSA and New York state law.  (Dkt. No. 1.)  Following an initial conference on November 10, 2010, and pursuant to the Court's Scheduling Order (Dkt. No. 14), the parties engaged in first-stage discovery addressing Stevens' claims that he was "similarly situated" to other ASMs. During the initial discovery stage, opt-in plaintiffs Amanda Siebenaler, Robert Vranek, Louis Colondres, Eranetta Gray, Constantino Katseyeanis, and Jimmy Michael Tuttle filed consents to join the collective action. Discovery on the similarly situated issue included Mr. Stevens' and opt-ins' depositions, document production from Defendants, and Rule 30(b)(6) depositions of corporate designees relating to the nature of the ASM job, as well as discovery of Host's policies and procedures.  Declaration of Seth R. Lesser ("Lesser Decl.") ¶ 3.

609352010.1                                            3

On June 10, 2011, Plaintiffs moved for FLSA conditional certification.  (*See* Dkt. No. 36;

Lesser Decl. ¶ 4.)  The Court granted the motion on October 10, 2012, conditionally certifying a

collective of present or former ASMs in the United States, with the exception of those in

California, at any time between June 15, 2009 and June 15, 2012.  (*See* Dkt. No. 56; Lesser Decl.

¶ 5.)  Following conditional certification, 269 individuals filed written consents to join the action

as opt-ins.  Lesser Decl. ¶ 6.

On February 14, 2013, the Court entered a scheduling order setting a schedule for

second-stage merits and final certification/decertification discovery.  (*See* Dkt No. 116; Lesser

Decl. ¶¶ 7.)  Pursuant to the Court's scheduling order, the Parties conducted significant written

discovery and exchanged hundreds of thousands of pages of documents.  Lesser Decl. ¶ 8.

Stevens sought numerous categories of discovery and electronically-stored information from

Defendants, including corporate policies and procedures, personnel files, payroll records, and

emails to and from the opt-ins and their supervisors, as well as from corporate custodians.

Stevens also sought discovery of other documents regarding Defendants' store operations and the

job duties and classification of ASMs.  KOL reviewed these documents.  *Id.*  Defendants served

interrogatories and requests for production of documents on a representative sample of 16 opt-ins

and deposed several representative opt-ins. Stevens took the Rule 30(b)(6) deposition of Host's

corporate designee on issues relating to the claims.  *Id.*

On April 7, 2014, Defendants filed a motion to decertify the collective action.  Stevens

filed a motion for final certification the next day.  The Parties filed respective opposition briefs

on May 7, 2014.  On August 27, 2014, the Court granted Defendants' motion to decertify the

collective action while denying Stevens' motion for final certification as moot.  (Dkt. No. 174.)

As a result of the decertification order, all opt-in Plaintiffs were dismissed from this case without

prejudice, leaving only Stevens.  Following decertification, Stevens appealed the decertification order to the Second Circuit Court of Appeals.  (Dkt. No. 175.)  Stevens also filed a motion to stay the decertification order pending the appeal.  Defendants opposed both the appeal and the motion to stay.  On January 26, 2015, the Second Circuit dismissed Stevens' appeal as premature, and this Court followed on March 4, 2015 by denying as moot Stevens' motion to stay.  (Dkt. No. 191.)

Later, in March 2015, a number of the dismissed opt-in Plaintiffs began filing individual FLSA actions in various jurisdictions throughout the country, based on the same factual allegations and legal theories that they relied on as opt-ins in this case.  Ultimately a total of 36 former opt-ins, or "Spin-Off Plaintiffs," filed individual FLSA claims in 16 separate cases in 15 different jurisdictions.  A chart reflecting all of the individual filings is attached as Exhibit A.  In addition, 26 other former opt-ins, or "Tolled Plaintiffs," agreed to a tolling agreement with Host under which the statute of limitations as to their individual claims was tolled as of July 17, 2015.  A chart listing the Tolled Plaintiffs is attached as Exhibit B.  As of July 17, 2015, approximately 63 former opt-ins had or were planning to assert individual claims following decertification.

In the 16 individual actions that were filed, Host filed motions to dismiss several of them on the grounds that Plaintiffs did not adequately allege willful violations.  Plaintiffs successfully opposed the motions to dismiss in a number of cases while Defendant voluntarily withdrew the motions in other cases upon agreeing to the Settlement herein.

The Parties also exchanged written discovery and documents, including emails and personnel files in the individual actions.  In several actions, Host deposed the former opt-in Plaintiffs.  Host also prepared summary judgment motions in cases in Texas, Florida, and Ohio in the weeks and months immediately preceding the Parties' agreement to the settlement terms.

In the meantime, two of the individual actions were resolved separately prior to the parties reaching a global settlement, *Lagamba v. HMS Host Toll Roads*, Civ. No. 15-3366 (E.D. Pa.), Dkt. No. 28 (order granting approval) and *Boden v. HMS Host USA, LLC*, Civ. No. 15-0606 (D. Colo.), Dkt. No. 47 (order requesting motion for approval), and one individual action was dismissed due to that plaintiff's decision not to proceed further with the case, *Clark v. Host Services of New York, Inc.*, Civ. No. 15-1282, Dkt. No. 17 (joint stipulation of dismissal).

Meanwhile, Host filed a motion for summary judgment against Stevens on May 26, 2015. On August 8, 2015, this Court denied Host's summary judgment motion, and on August 27, 2015 the Court set a trial date for February 22, 2016.

With *Stevens* set for trial, and with discovery coming to a close in many of the individual Spin-Off Plaintiff actions, the Parties negotiated a global Settlement to resolve all remaining and potential cases for Plaintiffs. That is, the Parties attempted to settle the claims of Stevens and the claims of all former opt-in plaintiffs, including those who had not yet refiled individual FLSA actions. The Parties ultimately reached a global Settlement Agreement. Following the global agreement, individual Spin-Off Plaintiffs began to dismiss their cases in various jurisdictions to enable consolidation before this Court to approve the global Settlement.

During this case and the individual actions, the Parties had numerous discovery disputes, including one that was taken to Magistrate Judge Pohorelsky on the issue of electronically-stored information. (*See* Dkt. No. 135; Lesser Decl. ¶ 13.) Throughout this litigation and following conditional certification, decertification, and the subsequent filing of individual FLSA actions, Plaintiffs have vigorously litigated their claims that the primary duties of ASMs was non-managerial and were insufficient to comply with the exemption requirements in 29 U.S.C. § 213(a)(1) and the federal regulations, including 29 C.F.R. §§ 541.100, and 541.200. Lesser

Decl. ¶ 14.  Defendants, in turn, strongly disputed the validity of the claims asserted against them and offered evidence and argument in support of their multiple defenses, including, but not limited to: (1) submitting evidence from other ASMs allegedly substantiating the full range of managerial and supervisory duties performed by the ASMs; (2) disputing Plaintiffs' computation of wages owed; and (3) contending that at all times, it acted in good faith and did not willfully or knowingly violate any provision of the FLSA.  Both sides recognize these disputed issues could be subjected to extended litigation.  *Id.*

Based on the discovery, fact investigations, and settlement negotiations, counsel for the Parties were in an exceedingly favorable position to evaluate the strengths and the weaknesses of their claims and defenses.  Lesser Decl. ¶ 18.  KOL is well-experienced in this area of the law and informed of the issues.  Similarly, Defendants could fully evaluate the strengths and weaknesses of their defenses in each of the cases.  The Settlement is thus the product of fully informed parties negotiating forcefully and at arm's length.

III.    <u>SUMMARY OF THE SETTLEMENT TERMS</u>

The proposed Settlement's terms are straightforward.  While maintaining its general denial of the claims, Host has agreed to pay $1.29 million as a common fund settlement.  After subtracting the administrative costs associated with the Settlement, the attorneys' fees and expenses for Stevens' Counsel, the net proceeds of the Settlement will be allocated as set forth in the Settlement Agreement.  Stevens and each Spin-Off Plaintiff and Tolled Plaintiff will receive an allocation that corresponds to the number of tenured workweeks they had when either filing their claim or agreeing to the tolling agreement so that each such Participating Plaintiff is entitled to receive a *pro-rata* share of the Settlement based on the proportionate number of weeks that he or she worked as an exempt ASM during the period three years—or, where applicable under state law, six years—prior to when their initial consents to join this Action were filed until

December 1, 2016, when the Settlement Agreement was first agreed to. Each Plaintiff who is neither Stevens, a Spin-Off Plaintiff nor a Tolled Plaintiff will receive an allocation of $400 in recognition of their release of claims against Defendants inasmuch as Plaintiffs claim that they could have a right to appeal the decertification decision upon the conclusion of Mr. Stevens' individual case, a potential right of appeal which Defendants—while denying Plaintiffs would have such right—wish to resolve and avoid any lawsuits hereafter challenging the decertification in this case.[1] Assuming approval of the Settlement, on average, each Participating Plaintiff who was a Spin-Off or Tolled Plaintiff's share of the Settlement would be a gross amount of approximately $19,000.00 in exchange for their release.[2] Lesser Decl. ¶ 20. Checks would be directly mailed to all Participating Plaintiffs while any Settlement funds allocatable to non-Participating Plaintiffs would revert to HMSHost, a reversion which is not only typical in common fund settlements generally but is specifically and particularly appropriate for FLSA cases for which there cannot be any Rule 23-type release of claims by non-claimant class members. *See In re Staples Wage & Hour Employment Practices Litig.*, 08-cv-5746, Report & Recommendation at 44 (Sept. 17, 2010 D.N.J.), *adopted by order dated* Oct. 26, 2010 (D.N.J.) (rejecting objection to FLSA/state law common fund settlement based upon reversionary provision for FLSA claims because of the unique nature of the FLSA) (copies of relevant pages from Report & Recommendation, the only authority of which counsel are aware addressing this issue are attached as Exhibits E and F).

---

[1]   Inasmuch as the Second Circuit has not addressed this issue, an open question remains that the Settlement here would put to rest for anyone who rejoins the case in order to obtain the $400 recovery.

[2]   "Participating Plaintiff" refers to those Plaintiffs who return the Settlement Notice and accompanying Release.

IV.     **ARGUMENT**

A.     **The Court Should Grant Preliminary Approval Of The Settlement**

Court approval of this settlement will be necessary to effectuate a valid and enforceable release of Stevens' and the other Plaintiffs' FLSA claims. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015); *Hens v. ClientLogic Operating Corp.*, 2010 U.S. Dist. LEXIS 139126, at *4 (W.D.N.Y. Dec. 19, 2010); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) (leading decision). The standard for approval of an FLSA settlement "is lower than for a Rule 23 settlement because a FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement." *Hens*, 2010 U.S. Dist. LEXIS 139126, at *4 (citation omitted). Courts "approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *Archer v. TNT USA, Inc.*, 12 F. Supp. 3d 373, 387 (E.D.N.Y. 2014). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores,* 679 F.2d at 1353-54 (11th Cir. 1982); *Silverstein v. Alliance Bernstein L.P.*, 2013 U.S. Dist. LEXIS 179734, at *18 (S.D.N.Y. Dec. 20, 2013). Courts view the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement, *Lynn's Food Stores*, 679 F.2d 1350, and "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Hens*, 2010 U.S. Dist. LEXIS 139126, at *5; *accord also Lynn's Food Stores*, 679 F.2d at 1354; *Silverstein*, 2013 U.S. Dist. LEXIS 179734, at *19. While the present motion is made in support of preliminary approval, as is set forth below, the parties believe that it should readily be finally approved by the Court.

B.     **The Settlement Would Resolve Contested Litigation Over A** *Bona Fide* **Dispute**

The Parties vigorously contested Defendants' classification of ASMs as exempt from overtime compensation.  The litigation, spanning several years, has included extensive written and deposition discovery, and the Parties have submitted and briefed numerous motions. Significantly, and over Defendants' objections, the Court granted Stevens' motion for conditional certification, notice was sent, resulting in roughly 270 ASMs joining the case. Likewise, over Stevens' objections, the Court granted Defendants' motion for decertification, and as a result, the Parties litigated numerous individual actions throughout the country. In addition, Plaintiffs successfully defended against several individual summary judgment motions, both in Mr. Stevens case as well as for Spin-Off Plaintiffs.

As discussed, there was extensive discovery about all aspects of the case and a number of discovery motions before Magistrate Judge Pohorelsky.  As a result of the information produced by the parties, the depositions that took place, and the hundreds of thousands of pages of documents produced, both parties understood the risks and potential outcomes of continued litigation.  The Parties agreed to engage in settlement negotiations to attempt to reach an amicable resolution of the litigation, knowing that several factual and legal disputes remained unresolved.  Chief among these issues were: (1) whether ASMs met the requirements of the executive or administrative exemption under the FLSA; (2) whether Host acted willfully (*i.e.*, recklessly) in classifying ASMs as exempt; (3) whether Host could prove that it acted in good faith to avoid liquidated damages; and (4) assuming liability, what was the proper method for determining and calculating damages.  Lesser Decl. ¶ 17.  The proposed Settlement was reached only after extensive negotiations that explored the strengths and weaknesses of the parties' claims and defenses in each of the separate cases.

Because the Settlement would resolve contested litigation over a *bona fide* dispute, final

approval of the proposed Settlement will, following notice, be appropriate. *See, e.g.*, *Forauer v.*

*Vt. Country Store, Inc.*, 2015 U.S. Dist. LEXIS 5604, at *15 (D. Vt. Jan. 16, 2015) (granting

final approval of FLSA action where the "[s]ettlement [a]greement was reached as a result of a

'contested litigation' to resolve bona fide disputes—both factual and legal disputes that remain

unresolved.") (citations omitted)); *Bozak v. FedEx Ground Package Sys.,* 2014 U.S. Dist. LEXIS

106042, at *8 (D. Conn. July 31, 2014) (approving FLSA settlement reached after negotiations

concerning "the uncertain legal and factual issues involved."); *Lizondro-Garcia v. Kefi L.L.C.*,

300 F.R.D. 169, 180 (S.D.N.Y. 2014) (granting final approval of settlement entered "after an

investigation of the claims and defenses."); *Hen*s, 2010 U.S. Dist. LEXIS 139126, at *5 (finding

proposed settlement of employees' FLSA claims resolved contested litigation of a bona fide

dispute that had been pending for more than five years).

### C.     The Settlement Is A Reasonable Compromise Of Contested Issues

The Settlement reflects a reasonable compromise of contested issues.  The existence of

these *bona fide* contested issues is clear (*see* Section II, *supra*) and multiple disputed questions of

fact and law exist.  In determining whether proposed FLSA settlements are fair and reasonable,

courts consider the totality of the circumstances.  Among the factors to be considered are: "(1)

the plaintiffs' range of possible recovery;" (2) the extent to which "the settlement will enable the

parties to avoid anticipated burdens and expenses in establishing their respective claims and

defenses;" (3) the seriousness risks faced by the parties; (4) whether "the settlement agreement is

the product of arm's-length bargaining between experienced counsel;" and (5) "the possibility of

fraud or collusion."  *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).  All

five factors will weigh in favor of final approval here.

### 1.    The Settlement Falls Squarely Within The Range Of Possible Recovery

The Settlement amount, compared to the possible range of recovery is high.  Had Stevens and the other Plaintiffs prevailed on liability, and using a reasonable set of assumptions about the hours worked, Stevens asserts that the recoverable damages (depending on which side's analysis of the proper methodology for determining damages would be upheld), would have ranged from $1.8 million to $5.4 million, which would have been for *all* the individuals in the decertified collective action.  Stevens submits that the $1.29 million result here, given this range, is an excellent result because of the attendant risks in trying such cases and the fact of the decertification of the collective action.

The quality of the Settlement can also be appreciated by comparing it to other recent court-approved settlements involving materially the same FLSA claims against other retail chain stores.  Assuming approval of the Settlement, each individual who was actively pursuing his or her claims – that is Mr. Stevens, the Spin-Off Plaintiffs, and the Tolled Plaintiffs – will receive, on average, a gross amount of roughly $19,000 in exchange for their release.  Those additional Stevens opt-ins who did not bring an individual action or enter into a toll but who still wish to participate in the Settlement will each receive $400 in exchange for their release.  While every case is different, this compares exceedingly favorably to the average gross settlement amount per person in Stevens' counsel's recent FLSA managerial misclassification collective action settlements, which have been approximately $6,000 (*Stallard v. Fifth Third Bank,* No. 2:12-cv-01092 (MRH) (final approval obtained on February 25, 2015 for $3.25 million for 541 plaintiffs)), $5,000, (*Whittington v. Taco Bell of America, Inc.,* 2013 U.S. Dist. LEXIS 161665 (D. Colo. Nov. 14, 2013) ($2.49 million settlement for 476 plaintiffs)); and $11,300.00 (*McKee v. PetSmart, Inc.,* 1:12-cv-01117-SLR-SRF (D. Del. July 27, 2015) ($3.8 million settlement for

332 plaintiffs)).  Indeed, the only misclassification collective action settlement of which I am

aware that had a higher gross average was in *Ravenell v. Avis Budget Group, Inc.*, 08-cv-2113-

ENV-SMG (E.D.N.Y. May 17, 2016) ($7.9 million for 251 plaintiffs, equating to $31,474 per

person).  In that case, however, decertification had been denied and the case was on the steps of

being tried as a collective action.[3]  In fact, when my firm tried materially the same case against

Staples, Inc. (discussed below), the average jury award for the 343 named and opt-in plaintiffs

was $7,331.  When viewed in the light of these similar retail misclassification precedents, this

Settlement compares most favorably for those individuals who did agree to proceed in their

individual actions.

### 2.    The Settlement Will Enable The Parties To Avoid Expenses

The Settlement will also enable the parties to avoid the burdens and expenses associated

with the continued litigation of this nationwide case.  At the time the proposed Settlement was

negotiated, the Parties were preparing to complete discovery in a number of individual cases, and

Defendants anticipated filing motions for summary judgment in each of the individual cases

throughout the country.  In addition, the parties were preparing to try Stevens' individual claim,

as well as the claims of several of the Spin-Off Plaintiffs.

Notwithstanding this, and assuming the cases proceeded, the numerous trials would have

involved extensive testimony by dozens of Plaintiffs, and Defendants in each case.  Preparing and

---

[3] All of the settlements just discussed involved collective-action only classes. If one were to also consider the settlements of collective action and class cases involving assistant manager positions in recent years (*i.e.*, what are called "hybrid" settlements) the Settlement here is even more favorable.  For recent such cases in the Second Circuit, average gross recoveries have included $1,161 (*Ferreira v. Modell's Sporting Goods, Inc.*, No. 11-cv-2395 (S.D.N.Y.) (final approval obtained March, 12, 2015 for $800,000 settlement for class of 689 assistant managers)); $2,779 (*Ogaian et al. v. Christmas Tree Shops. et al.*, 12-cv-1278 (S.D.N.Y.) (final approval obtained June 4, 2014 for $1,340,000 for 408 department managers)); $1,561 (*Alli v. Boston Market Corp.*, No. 10-cv-0004 (D. Conn.) (final approval obtained April 17, 2012 for $3 million for 1,921 assistant managers)); $1,771 (*Jenkins v. Sports Authority*, No. 09-cv-224 (E.D.N.Y.) (final approval obtained September 30, 2011 for $990,000 settlement for class of 559 co-managers)).

putting on evidence would consume tremendous time and resources for both sides, and would have required substantial judicial resources to adjudicate the Parties' dispute.  Any judgments would likely be appealed, extending the litigation's duration.  What is more, various judgments could have been conflicting given the disparate jurisdictions and factual circumstances involved.  By consolidating the remaining Plaintiffs and settling at this stage, both sides seek to avoid additional expense and delay, and all Plaintiffs can recover.  This factor weighs for settlement.

KOL is particularly well aware of the risks and delays attendant upon misclassification cases inasmuch as Mr. Lesser and Ms. Rudich, in January 2009, were trial counsel at one of the few FLSA misclassification collective action cases tried to a jury—this one against Staples, Inc.—that involved materially the same claims herein.  Lesser Decl. ¶ 35.  That trial consumed six weeks of time, cost hundreds of thousands of dollars and presented innumerable contested issues of both law and fact.  Although a jury verdict was obtained, the post-trial motion practice that followed was quite extensive and included, among other things, motions for judgment notwithstanding the verdict, to have the damages reduced pursuant to the "fluctuating work week" basis of calculating overtime and for decertification of the collective.  *Id.*

The Settlement makes monetary relief available to all of the Plaintiffs in a prompt manner and will avoid a lengthy trial, post-trial briefing, and appellate proceedings.  *See Thornhill v. CVS Pharm., Inc.*, 2014 U.S. Dist. LEXIS 37007, at *4 (S.D.N.Y. Mar. 20, 2014) (FLSA settlement was fair and reasonable in light of, among other things, the "expenses involved in additional litigation").

### 3.    The Settlement Will Mitigate Serious Litigation Risks For The Parties

The Settlement also mitigates the litigation risks faced by both sides.  In a misclassification wage and hour case, forecasting an outcome is not as simple as estimating the risk of prevailing on the merits and adding some measure of litigation risk.  The estimated potential

recovery by Plaintiffs must account for many legal and factual contingencies, such as how many hours they worked, how many weeks per year they worked those hours, whether they can recover a third year of damages under the FLSA (a question of willfulness), and whether they can obtain liquidated damages under the FLSA (a question of good faith).  *See Thornhill*, 2014 U.S. Dist. LEXIS 37007, at *4 (noting risks associated with continued litigation).  These fact-intensive questions depend on favorable legal determinations, and when misclassification cases reach juries, the results can be unpredictable, as demonstrated by the last five jury cases of which counsel is aware, two of which were won by plaintiffs and three by defendants.[4]

### 4.     The Settlement Resulted From Arm's Length Negotiations Between Experienced Counsel

The Settlement resulted from arm's length negotiations between counsel with substantial experience in FLSA collective action litigation.  Baker & Hostetler LLP, which represents Defendants, is one of the preeminent law firms in the country with a robust labor and employment practice.  In turn, KOL, which represents Plaintiffs, has a particularly successful track record in wage and hour cases, including, for instance, prior trial victories in FLSA collective action cases.  *See Hens*, 2010 U.S. Dist. LEXIS 139126, at *5 (granting final approval of FLSA settlement that was "the product of lengthy, vigorous arm's length negotiations between experienced counsel").

### 5.     The Settlement Was Not The Product Of Fraud Or Collusion

Fraud and collusion are absent.  The procedural history reflects a hard-fought litigation and the Settlement is the product of extensive, arms-length negotiations between counsel for the

---

[4] *Compare, e.g.*, *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008) (plaintiffs' verdict); *Stillman v. Staples, Inc.*, 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 11, 2009) (same) *with Perkins v. Southern New England Tel. Co. Inc.*, No. 3:07-00967 (Judgment, Dkt.  572) (D. Conn. Oct. 24, 2011) (defendant's verdict); *Henry v. Quicken Loans, Inc.*, Case No. 2:04-cv-40346-SJM-MJH (E.D. Mich. 2011) (same); *Bell v. Citizens Fin. Group, Inc.*, 2:10-cv-00320 (W.D. Pa. 2013) (same).  *See* Lesser Decl. ¶ 33.

Parties.  *See Galantowicz*, *supra* (Decision and Order, Dkt. No. 69, at 2) (finding that the settlement was the product of arm's-length negotiations between experienced counsel, "favoring the conclusion that the decision [to settle] ... was not tainted by coercion or overreaching.") (citation omitted).  The Parties believe that the Settlement is fair and reasonable and, we submit, should be approved.  *See Stefaniak v. HSBC Bank USA, N.A.*, 2008 U.S. Dist. LEXIS 53872, at *9 (W.D.N.Y. June 28, 2008) (granting final approval of FLSA settlements that were "fair and reasonable resolutions of bona fide disputes reached as a result of contested litigation.") (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353); *see also Tiro v. Public House Invs., LLC*, 2013 U.S. Dist. LEXIS 129258, at *32 (S.D.N.Y. Sept. 10, 2013) (final approval of FLSA settlement warranted where the parties were "represented by counsel experienced in wage and hour law, engaged in strenuous litigation, exchanged extensive discovery and damages calculations, and conducted months of vigorous negotiations in an effort to reach the settlement.").

### D.     Plaintiffs' Attorneys' Fees Request Will Be Reasonable

At final approval, KOL will seek an award of attorneys' fees in $425,700 (33% of the $1.29 million total settlement amount).  Defendants do not oppose this application.  This request will be reasonable and well within the accepted range awarded in FLSA cases in this District and throughout the Second Circuit.  KOL submits that it is entitled to such reasonable attorneys' fees to compensate them for their work in achieving this settlement on behalf of the Plaintiffs.  In *Goldberger*, the Second Circuit articulated six factors to consider in determining the reasonableness of common fund fee applications: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risks of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000) (internal quotations and citation omitted).  KOL submits that each of these factors favor the fee request

but would first note that while "[a]ttorney's fees in an FLSA settlement are subject to court approval" for reasonableness, *Falleson v. Paul T. Freund Corp.*, 736 F. Supp. 2d 673, 674 (W.D.N.Y. 2010), there is a "greater range of reasonableness" where, as here, "the parties [have] settled on the fee through negotiation." *Misiewicz v. D'Onofrio Gen. Contractors Corp.*, No. 08CV4377(KAM)(CLP), 2010 WL 2545439, at *5 (E.D.N.Y. May 17, 2010), *report and recommendation adopted*, No. 08-CV-4377 KAM CLP, 2010 WL 2545472 (E.D.N.Y. June 18, 2010).

### 1. Stevens' Counsel Has Expended Significant Time And Labor Prosecuting This Action And The Ensuing Spin-Off Litigation

KOL's time and labor invested in litigating and settling this case was significant and reasonable. To begin with, KOL prosecuted this litigation for roughly five years. In furtherance of their efforts, KOL alone (not including the other firms that subsequently came to represent the Spin-Off Plaintiffs as local counsel) expended roughly 3,100 hours of professional time for an aggregate lodestar in excess of $1.47 million. Lesser Decl. ¶¶ 27, 31. The hours reported are reasonable for a case of this complexity and magnitude and length and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff. *Id.* ¶¶ 27-28. Activities conducted by KOL include interviewing numerous Plaintiffs; obtaining and analyzing hundreds of thousands of pages of documents and e-mails related to Defendants' store operations, job duties of ASMs, compensation structure and corporate structure; successfully moving for conditional certification; preparing for and defending depositions of Plaintiffs; taking the deposition of Defendants' Rule 30(b)(6) designees, expert witness, and other witnesses; completing a detailed, class-wide damages analysis; filing and prosecuting numerous individual claims after decertification of the collective; and successfully negotiating the Settlement. *Id.* ¶ 29; *see also Tiro*, 2013 U.S. Dist. LEXIS 129258, at *37-38. KOL has also followed up with

Stevens, the Spin-Off Plaintiffs and the Tolled Plaintiffs regarding the Settlement.  Lesser Dec., ¶ 30.  In addition, work is still to be done to effectuate the administration of the settlement.  *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) ("Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund."); *Parker v. Jekyll & Hydye Entm't Holdings., L.L.C.*, 2010 U.S. Dist. LEXIS 12762, at *7-8 (S.D.N.Y. Feb 9, 2009) ("[A]s . . . counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time.").  This time expenditure was reasonable given this long, contested litigation.

### 2.    This Nationwide FLSA Action Involves Complex Legal Issues

Courts have recognized that wage and hour cases involve complex factual and legal issues.  *See, e.g.*, *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, at *16 (S.D.N.Y. Sept. 16, 2011); *Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 743 (1981) ("FLSA claims typically involve complex mixed questions of fact and law.").  This action is no different and presented significant complex legal issues that applied to hundreds of ASMs who work or worked at Host *across the country*.  The case hinged on several mixed questions of fact and law, including the facts surrounding the job duties of ASMs and the legal question of whether they were entitled to overtime compensation.  KOL asserts that these mixed factual and legal questions support approval of its request for attorney's fees.  *See Johnso*n, 2011 U.S. Dist. LEXIS 105775, at *49-50; *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *39-40.

### 3. The Risk Of Receiving An Adverse Ruling On The Merits And/Or Decertification Of The Collective Is Significant

Courts in this Circuit have recognized "the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *40 (citing *Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144, at *10 (S.D.N.Y. Jan. 31, 2007)). "Despite the most vigorous and competent of efforts, success is never guaranteed." *Taft*, 2007 U.S. Dist. LEXIS 9144, at *10. KOL asserts that it undertook this action on a contingent fee basis, assuming a substantial risk they might not be compensated for their efforts. Lesser Decl. at ¶¶ 23, 32. Courts recognize the risk of non-payment as a factor in considering an award of attorneys' fees. *Datatec*, 2007 WL 4225828, at *7.

This case was one of the hardest kinds of misclassification cases – an assistant store manager case where the Plaintiffs were spread across the country and worked under different supervisors. More misclassification collective action cases have been lost than won in recent years. *See* page 12, n.5, *supra*. This case was entirely litigated on a contingency basis, with no guarantee of any payment. Lesser Decl. ¶ 23. As Judge Jones wrote in approving a fee in another retail misclassification case, "concerning the risk of nonpayment, we note that because Class Counsel accepted this case on a contingent fee basis, the risk of nonpayment was and remained substantial throughout." *Craig*, 2013 U.S. Dist. LEXIS 2658, at *13. Had this case been dismissed on summary judgment, trial or appeal, KOL would have received no payment for their work. Lesser Decl. at ¶ 32. KOL's fee request is supported by this factor. *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *41; *see also Johnso*n, 2011 U.S. Dist. LEXIS 105775, at *18.

### 4. The Parties Are Represented by Counsel with Significant Experience in Wage and Hour Litigation

The Parties submit that the quality of lawyering has been high on both sides. "To determine the 'quality of the representation,' courts review, among other things, the recovery

obtained and the backgrounds of the lawyers involved in the case." *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *42; *Johnson*, 2011 U.S. Dist. LEXIS 105775, at *51-52 (citations omitted).  Stevens and the other Plaintiffs are represented by experienced counsel who have invested substantial time and resources into the prosecution of this litigation.  *See* Lesser Decl. ¶¶ 23-35.  KOL has served as class counsel in numerous class and collective actions, including many significant wage and hour misclassification cases involving retail managerial misclassifications.  Lesser Decl. ¶ 35; *see also* Lesser Decl. Ex. 1 (KOL firm resume).  Importantly, they steered this case from inception through the entirety of the litigation's history, including the first-stage discovery, contested conditional certification, the joining of approximately 275 Plaintiffs and handling of document preservation matters for all Plaintiffs, the work undertaken as to second-stage merits/decertification discovery which encompassed depositions and the production and review of hundreds of thousands of pages of documents and ESI, the filing of and hearings on discovery motions; post-decertification; and the filing of multiple individual actions that ultimately led to the Settlement.  KOL's experience in representing workers in wage and hour class and collective actions was directly responsible for bringing about the positive Settlement.  *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *42; *Johnson*, 2011 U.S. Dist. LEXIS 105775, at *51-52 (citing class counsel's experience as a factor supporting an attorney's fee award of 33% of the fund).

Defendants, in turn, were represented by Baker & Hostetler, LLP, a large, nationwide employment and labor law firm.  The quality of opposing counsel is also important in evaluating the quality of KOL's work, and Defendants' counsel vigorously and defended Host.  *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004).  Accordingly, this factor weighs in favor the requested fees.

5.      **Class Counsel's Request For Attorneys' Fees Is Reasonable And Accords With Similar Awards In This Circuit**

KOL's asserts its fee request is "consistent with the norms of class litigation in this circuit." *McMahon v. Olivier Cheng Catering & Events, L.L.C*., 2010 U.S. Dist. LEXIS 18913, at *20 (S.D.N.Y. Mar. 2, 2010); *accord Lovaglio v. W & E Hosp*., 2012 U.S. Dist. LEXIS 94077, at *3 (S.D.N.Y. July 5, 2012) (awarding one-third of the total settlement amount in a wage and hour class action); *Johnson*, 2011 U.S. Dist. LEXIS 105775, at *19 ("A fee of 33% of the Settlement Fund is reasonable and "consistent with the norms of class litigation in this circuit."); *Hens*, 2010 U.S. Dist. LEXIS 139126, at *6-8 (awarding 33 1/3% of the settlement fund to plaintiffs' counsel); *Stefaniak*, 2008 U.S. Dist. LEXIS, at *9-10 (collecting cases and awarding class counsel 33 1/3% of $2.9 million settlement fund in wage and hour action); *Palacio v. E\*Trade Fin. Corp*., 2012 U.S. Dist. LEXIS 88019, at *26 (S.D.N.Y. June 22, 2012) (awarding class counsel 33 1/3% of settlement fund in wage and hour case). Indeed, a one-third request "is routinely approved by courts in this Circuit." *Rangel v. 639 Grand St. Meat & Produce Corp*., 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approving proposed FLSA settlement where attorneys sought one-third of the settlement amount, plus costs).[5] *See also Misiewicz*,

---

[5] In fact, 33% or one-third fees were awarded in all of the following wage and hour settlements, in addition to those cited in the text: *Ferreria v. Modell's Sporting Goods, Inc.,* 2015 U.S. Dist. LEXIS 32060, at *21 (S.D.N.Y. Mar. 12, 2015); *Raniere v. Citigroup Inc.,* 310 F.R.D. 211, 220 (S.D.N.Y. 2015); *Flores v. Anjost Corp*., 2014 U.S. Dist. LEXIS 11026, at *24-26 (S.D.N.Y. Jan. 28, 2014); *Guaman v. Ajna-Bar NYC*, 2013 U.S. Dist. LEXIS 16206, at *17-18 (S.D.N.Y. Feb. 5, 2013); *Capsolas v. Pasta Res. Inc*., 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) ; *Spicer v. Pier Sixty LLC*, 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012); *Alli v. Boston Mkt. Corp.,* No. 10-cv-0004 (Order, Dkt. 177) (D. Conn. Apr. 13, 2012); *Davis v. J.P. Morgan Chase & Co*., 827 F. Supp. 2d 172, 185-86 (W.D.N.Y. 2011) ($42 million settlement fund); *deMunecas v. Bold Food, LLC*, 2010 U.S. Dist. LEXIS 87644, at *19 (S.D.N.Y. Aug. 23, 2010); *Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *15; *Faican v. Rapid Park Holding Corp*., 2010 U.S. Dist. LEXIS 64382, at *6 (E.D.N.Y. June 29, 2010); *Prasker v. Asia Five Eight LLC*, 2010 U.S. Dist. LEXIS 1445, at *17 (S.D.N.Y. Jan. 4, 2010); *Clark v. Ecolab*, 2009 U.S. Dist. LEXIS 76613, at * 27 (S.D.N.Y. May 11, 2010); *Duchene v. Michael Cetta, Inc*., 2009 U.S. Dist. LEXIS 85955, at *8 (S.D.N.Y. Sept. 10, 2009); *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *18; *Mohney v.*

2010 WL 2545439, at *5 ("[T]he Court is reticent to disapprove a settlement on the amount of attorney's fees, since both parties assumingly have knowledge of how attorney's fees are calculated in this district and were negotiating at arm's length.").

### 6.   Public Policy Considerations Favor Awarding Class Counsel Attorneys' Fees

Finally, KOL asserts that public policy supports the requested fee award because it "properly balances the policy goal of encouraging counsel to pursue meritorious actions while protecting against excessive fees." *Dupler v. Costco Wholesale Group*, 705 F. Supp. 2d 231, 244 (E.D.N.Y. 2010).  In rendering awards of attorneys' fees, courts in this circuit "have also taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999).  Where relatively small claims can only be prosecuted through aggregate litigation, and where wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk, "[a]dequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes." *Johnson*, 2011 U.S. Dist. LEXIS 105775 at *56 (citations omitted).  Courts have recognized that "fee awards in cases like this serve the dual purposes of encouraging private attorneys general to seek redress for violations and discouraging future misconduct of a similar nature." *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *45 (internal quotation marks and citations omitted).  Here, KOL successfully negotiated a Settlement that obtains significant monetary compensation for the Plaintiffs.  By aggregating the claims of individual ASMs, an award of attorneys' fees ensures that "plaintiffs' claims [will] … likely be heard." *Frank v. Eastman Kodak*, 228 F.R.D. 174, 189

---

*Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 U.S. Dist. LEXIS 27899, at *16 (S.D.N.Y. Mar. 31, 2009); *Parker*, 2010 U.S. Dist. LEXIS 12762, at *7.

(W.D.N.Y. 2005).

### 7.    The Lodestar Cross Check Further Supports an Award to Class Counsel of 33% of the Settlement Fund

Following *Golderberger*, "the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a baseline or cross check." *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *46 (citing *Johnson*, 2011 U.S. Dist. LEXIS 105775, at *20). The lodestar analysis is performed by multiplying the number of hours reasonably expended on a client's case by a reasonable hourly billing rate for such services. *Johnson*, 2011 U.S. Dist. LEXIS 105775, at *58 (citation omitted). In calculating the lodestar, "the hours documented by counsel need not be exhaustively scrutinized by the district court. *See In re Prudential Ins. Co. Am. Sales Litig.*, 148 F.3d 283, 342 (3d Cir. 1998) (approving this practice). Courts in this Circuit "regularly award lodestar multipliers from two to six times lodestar." *Johnson*, 2011 U.S. LEXIS 105775, at *58-59 (collecting cases).

Here, KOL's lodestar to date is roughly $1.47 million. Lesser Decl. ¶ 31. In addition, the lodestars of the other counsel who came to represent the Spin-Off Plaintiffs totaled in excess of $50,000.00. *Id.* Thus the requested attorneys' fees of $425,700.00, results in an exceedingly substantial negative multiplier of 29%. *Id.* Most respectfully, inasmuch as this case will represent a large loss against the time recorded on the books of KOL, the requested fees are even more reasonable. In all likelihood there will be additional time expended to oversee the Settlement and to handle a significant volume of calls from the Plaintiffs, which will reduce the negative multiplier even further. *Id.* ¶ 30. KOL's fee request is well within the range of reasonability.

### E.      The Payment Of Costs And The Settlement Expenses From The Settlement Fund Will Be Appropriate

Pursuant to the Settlement Agreement, KOL shall seek at final approval reimbursement for litigation expenses of $136,274.64 from the settlement fund, as well as payment of the settlement costs to Simpluris, the Settlement Administrator.  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (quotation omitted).

As indicated in the Lesser Decl. ¶ 34, KOL's and co-counsel's expenses are monies that counsel has invested at their own expense so as to meet the costs of the litigation.  These costs were reasonable and incurred in the prosecution of this matter, including expenses such as filing fees, postage, on-line research, travel, and deposition and transcripts costs.  These expenses were incurred to benefit the Plaintiffs, and counsel may be reimbursed for them.  *See, e.g., Stefaniak*, 2008 U.S. Dist. LEXIS 53872, at *11; *Chambery v. Tuxedo Junction Inc*., 2014 U.S. Dist. LEXIS 101939, at *26-27.

As to its costs and expenses, Simpluris will provide notice as directed by the Court. Going forward, Simpluris will make settlement payments, determine payroll taxes, and issue W-2 and 1099 forms to all claimants.  Simpluris Proposal, attached as Exhibit G.  Simpluris has estimated that its expenses in handling the notice and administration to completion will be only $7,500.00.  *Id*.  Based on KOL's experience, this amount is an exceedingly reasonable amount. Lesser Decl. ¶ 39.

### F.      The Requested Service Award to The Named Plaintiff Would Be Appropriate

Courts routinely approve service awards in wage and hour class and collective actions. *See, e.g., Flores*, 2014 U.S. Dist. LEXIS 11026, at *27-28 ($25,000 service awards to each

named plaintiff); *Capsolas*, 2012 U.S. Dist. LEXIS 144651, at *26-27 (awards of $20,000 and $10,000); *Sewell v. Bovis Lend Lease LMB, Inc*., 2012 U.S. Dist. LEXIS 53556, at *40-43 (S.D.N.Y. Apr. 20, 2012) (awards of $10,000 and $15,000). Plaintiffs will seek a Service Award of $17,000 for Named Plaintiff Easton Stevens.  The request is reasonable given the significant contributions he made to advance the prosecution and resolution of this case.  He aided KOL's investigation and prosecution of the claims, responded to written discovery, and sat for his deposition.  Lesser Decl. ¶ 36.  He also patiently waited while the collective action aspects of the case were litigated and remained ready and willing to try his case until the time the settlement was reached.  In short, he put his name forward as an individual who sued a former employee and thereafter substantially aided the litigation.

V.     **CONCLUSION**

For the foregoing reasons, the Parties respectfully request that this Court: (a) preliminarily approve the Settlement; (b) approve the Notice of Proposed Settlement of Lawsuit to be sent to the Plaintiffs; and (c) set a final fairness hearing for the purpose of determining whether the Settlement should be finally approved by the Court as fair, reasonable, and adequate grant.

Dated: July 20, 2016

                                        Respectfully submitted,


                                By: /s/ Seth R. Lesser
                                    Seth R. Lesser
                                    *E-mail: seth@klafterolsen.com*
                                    Fran L. Rudich
                                    E-mail: fran@klafterolsen.com
                                    Michael H. Reed
                                    E-mail: michael.reed@klafterolsen.com
                                    **KLAFTER OLSEN & LESSER LLP**
                                    Two International Drive, Suite 350
                                    Rye Brook, NY 10573

Telephone: (914) 934-9200

***Attorneys for Plaintiff***


/s/Patrick M. Muldowney

Patrick M. Muldowney
E-mail: pmuldowney@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 South Orange Avenue
SunTrust Center, Suite 2300
P.O. Box 112
Orlando, FL 32802-0112
Phone: (407) 649-4000
Fax: (407) 841-0168

Gregory V. Mersol
**BAKER & HOSTETLER LLP**
3200 PNC Center
1900 East Ninth Street
Cleveland, OH 44114-3485
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
gmersol@bakerlaw.com

Margaret Rosenthal
**BAKER & HOSTETLER LLP**
12100 Wilshire Boulevard, 15th Floor
Los Angeles, CA 90025-7120
Telephone: (310) 820-8800
Facsimile: (310) 820-8859
mrosenthal@bakerlaw.com

***Attorneys for Defendants***

609352010.1